EVAUN M. NICHOLS ET AL. v. EDWARD EARL
WILSON ET AL.

[No. 150, September Term, 1982.]

*Decided June 3, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Thomas A. Wade* for appellants.

*William A. Ehrmantraut,* with whom were *Donahue, Ehrmantraut & Montedonico, Chartered* on the brief, for appellees.

COUCH, J., delivered the opinion of the Court.

Once again we are called upon to determine what type claim against a health care provider is covered by the Health Care Malpractice Claims Act [1] (the Act). Quite recently, we decided *Cannon v. McKen,* 296 Md. 27, 459 A.2d 196 (1983), which decision, in large measure, is dispositive of the instant case.

The present controversy arose when Judith E. Nichols, on behalf of herself and her minor child Evaun, filed an action in the Circuit Court for Prince George's County seeking damages from Edward E. Wilson, M.D., Gary Langston, M.D., P.A., Leland Memorial Hospital, Fran Hough and Patricia Ciccone. The action was in three counts, based on assault and battery, negligence, and intentional infliction of emotional distress.[2]

---

1. Md. Code (1974, 1980 Repl. Vol.), Courts and Judicial Proceedings Article, Sec. 3-2A-01.

2. "Evaun M. Nichols, Infant, by her natural mother and next friend, Judith E. Nichols and Judith E. Nichols, sui juris, Plaintiffs, by their attorney, Thomas A. Wade, sue Edward Earl Wilson, M.D., Gary Langston, M.D., P.A., Leland Memorial Hospital, Fran Hough and Patricia Ciccone for that:

156

The defendants below reacted to this action by filing a motion to dismiss based on their perception that the claims

## COUNT I

### ASSAULT AND BATTERY

1. Evaun M. Nichols, the Infant Plaintiff, was born on February 28, 1976, being five years of age at the time of the occurrences hereinafter stated.

2. Judith E. Nichols, the other of the Plaintiffs herein, is the natural mother and next friend of the said Infant Plaintiff, Evaun M. Nichols. She brings this suit as mother and next friend on behalf of her infant daughter.

3. At all times hereinafter stated, Edward Earl Wilson, M.D. was employed by Gary Langston, M.D., P.A.; Gary Langston, M.D., P.A. was employed by Leland Memorial Hospital; and Fran Hough and Patricia Ciccone were employed by Leland Memorial Hospital.

4. At all times hereinafter stated, Edward Earl Wilson, M.D., Fran Hough, Patricia Ciccone, and Gary Langston, M.D., P.A., were acting within the scope of their respective employments.

5. On June 9, 1981, Plaintiff, Evaun M. Nichols, was admitted to Leland Memorial Hospital located in Prince George's County for suture removal from her left cheek. Edward Earl Wilson, M.D., being assisted by Fran Hough and Patricia Ciccone, prepared to effect the suture removal upon Evaun M. Nichols. Fran Hough and Patricia Ciccone held down the Plaintiff, Evaun M. Nichols, who was fully conscious at all times, on the operating table ostensibly to immobilize Evaun M. Nichols, thereby rendering Evaun M. Nichols defenseless. Before suture removal and while Evaun M. Nichols was being held down, without provocation, Edward Earl Wilson, M.D., intentionally, violently, maliciously, wantonly and recklessly struck with his hand the left cheek of Evaun M. Nichols with great force causing Evaun M. Nichols to suffer and sustain serious, painful and permanent injuries to her body, severe mental anguish and shock to her body systems, and other damages and injuries.

6. Plaintiff alleges that Gary Langston, M.D., P.A. and Leland Memorial Hospital are vicariously liable for the tortious conduct of Edward Earl Wilson, M.D., Fran Hough, and Patricia Ciccone in that Gary Langston, M.D., P.A. and Leland Memorial Hospital: (a) impliedly ratified the above stated conduct by failing to discharge the actors despite full knowledge of material facts stated herein; (b) knew or should have known of the violent propensities of Edward Earl Wilson, M.D.; and (c) breached their duty to protect the Plaintiff, Evaun M. Nichols, who was a patient and invitee.

WHEREFORE, this action is brought and the Infant Plaintiff Evaun M. Nichols, through her natural parent and next friend, Judith E. Nichols claims compensatory damages in the amount of One Hundred Thousand Dollars ($100,000.00) and punitive damages of Two Hundred Thousand Dollars ($200,000.00).

## COUNT II

### NEGLIGENCE

7. The Infant Plaintiff, Evaun M. Nichols through her natural parent and next friend, Judith E. Nichols incorporate all allegations of fact contained in Count I as fully as if said allegations were repeated at length herein.

being pursued were such as to be within the coverage of the Act.[3] Thereafter, appellants' counsel amended the negligence count (Count II) to downgrade the ad damnum clause therein to $5,000.00, which, of course, would have the effect of removing that count from coverage under the Act. The court heard oral argument on the motion raising preliminary objection and subsequently granted it; thereafter, a

---

8. Additionally, immediately after striking the Infant Plaintiff, Edward Earl Wilson, M.D. rushed from the area of occurrence thereby abandoning the Infant Plaintiff not only for the treatment for which she was originally admitted but also for the additional injuries resulting from the striking. Fran Hough and Patricia Ciccone, still present, and observing the Infant Plaintiff, Evaun M. Nichols, choking on her own blood from the injuries suffered from the striking, did not administer to these painful new injuries, thereby breaching their duty to the Infant Plaintiff, Evaun M. Nichols. As a result of this neglect by Fran Hough, Patricia Ciccone, and Edward Earl Wilson, M.D., the Infant Plaintiff, Evaun M. Nichols, had to obtain medical treatment from another physician.

WHEREFORE, this action is brought and the Infant Plaintiff, Evaun M. Nichols, through her natural parent and next friend, Judith E. Nichols claims compensatory damages in the amount of Ten Thousand Dollars ($10,000.00).

## COUNT III
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

9. The Infant Plaintiff, Evaun M. Nichols, through her natural parent and next friend, Judith E. Nichols and Judith E. Nichols, sui juris, incorporate all allegations of fact contained in Counts I and II hereof, as full as if said allegations were repeated at length herein.

10. Plaintiff, Judith E. Nichols observed the occurrence described herein and alleges the conduct herein described was intentional, reckless, extreme and outrageous. Both Evaun M. Nichols and Judith E. Nichols have suffered severe emotional distress as a direct result of the Defendants' conduct.

11. Further, as a result of the severe emotional distress suffered by Evaun M. Nichols and Judith E. Nichols, Judith E. Nichols has and will in the future be forced to incur medical and other expenses on behalf of the Infant Plaintiff and herself; and both Evaun M. Nichols and Judith E. Nichols have been and will be deprived of each others' services and will be otherwise damaged.

WHEREFORE, this action is brought and, Infant Plaintiff, Evaun M. Nichols, by her natural parent and next friend, Judith E. Nichols and Judith E. Nichols, sui juris, claims compensatory damages in the amount of Two Hundred Thousand Dollars ($200,000.00)."

3. Subsequently defendants' counsel orally moved to amend his pleading to style it a motion raising preliminary objection, which motion was granted.

final judgment for costs in favor of the defendants was entered and this appeal ensued. We granted certiorari on our own motion prior to consideration by the Court of Special Appeals in order to consider an issue of public importance.

Quite simply, the appellants argue that their claims are not within the Act since such claims did not arise or result from the rendering or failure to render health care. Not surprisingly, the appellees argue the claims do fall within the scope of the Act because injuries received arose or resulted from such rendering or failure to render health care. Furthermore, the appellants contend that after amending Count II there was no medical malpractice claim left in the action, and that Counts I and III were clearly not covered under the Act. To this contention the appellees argue that under the rationale of *Montgomery Ward & Co. v. Cliser*, 267 Md. 406, 298 A.2d 16 (1972), the three claimed torts all arose out of one continuous occurrence, thus the damages sought in Counts I and III must be taken into account in determining whether the statutory amount set forth in the Act has been exceeded. (If this is a valid premise clearly the combined ad damnum clauses exceed $5,000.00 and that qualifying condition would be met.) Since we deem this latter contention to raise a threshold question, we shall deal with it first.

It is clear that even an admitted medical malpractice claim is not within the terms of the Act if the damages claimed are not more than $5,000.00.[4] By footnote 4 we stated in *Cannon, supra:*

> "We hasten to add that claims of strict liability and breach of warranty may not always be arbitrable; however, if such claims are related to and incorporate a negligence claim, as here, which may be arbitrable, then all counts will be arbitrable."
> 296 Md. at 38, 459 A.2d at 202.

We recognize that in the instant case the appellants have incorporated, by reference, all allegations of fact previously

---

4. Md. Code (1974, 1980 Repl. Vol.), Courts and Judicial Proceedings Article, Sec. 3-2A-02(a).

set forth in preceding counts. Thus, if the negligence count itself were arbitrable, all counts would likewise be arbitrable. We believe this result consonant with the efficient administration of justice and, of course, it avoids the piecemeal resolution of controversies.

However, in our view, appellees' reliance on *Cliser* is misplaced. In *Cliser,* the plaintiff had recovered damages for claims of false arrest, assault and battery, and slander. For each claim, the jury awarded $500.00 in compensatory damages and $4,500.00 in punitive damages for a total sum of $15,000.00. Defendant, Montgomery Ward, appealed the judgment on the basis, inter alia, that the jury should not have been allowed to consider an award of punitive damages. We determined that the award of punitive damages was appropriate under the facts of the case. However, we held that where separate awards of punitive damages were awarded for essentially one continuous occurrence, punitive damages could not be pyramided even though there were three distinct theories of liability, stating in pertinent part:

> "In our view, this point is controlled by the following principles quoted in 25 C.J.S. *Damages,* § 3:
>
>> 'It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories. . . . The overlapping of damages is generally not permissible, and a person is not entitled to recover twice for the same elements of damage growing out of the same occurrence or event. . . .'
>
> We think that in view of the combination of events presented in this case, the trial court erred in not furnishing guidelines to the jury in its con-

sideration of whether to award punitive damages for each of the three torts. The result, as we see it, was that the jury 'pyramided' the claims into a triple recovery of punitive damages on the basis 'of an episode that was one continuous occurrence.' " 267 Md. at 425, 298 A.2d at 26-27.

Accordingly, we modified the judgment by reducing the amount of punitive damages to $4,500.00. In doing so, we left standing three separate awards of compensatory damages. Thus, *Cliser* simply is inapposite to the instant case and does not support appellees' argument that the negligence count is arbitrable in view of the ad damnum clauses of the remaining counts.

Turning next to the question whether either, or both, of the other counts are within the Act, we conclude they are not. Preliminarily, we note that in *Cannon, supra,* we stated:

"Thus, it seems patent the legislature, by enacting the pertinent legislation, was reacting to a medical malpractice insurance 'crisis' which was recognized as only partially resolved by creation of the Medical Mutual Liability Insurance Society of Maryland. It therefore is clear to us that the legislature intended to include in the scope of the Act only those claims for damages done to or suffered by a person originating from, in pertinent part, the giving of or failure to give health care. *See also Oxtoby v. McGowan,* 294 Md. 83, 447 A.2d 860 (1982). In our view, the legislature did not intend that claims for damages against a health care provider, arising from non-professional circumstances where there was no violation of the provider's professional duty to exercise care, to be covered by the Act. It is patent that the legislature intended only those claims which the courts have traditionally viewed as pro-fessional malpractice to be covered by the Act." 296 Md. at 34, 459 A.2d at 200.

Thus it is only those claims for damages where there has been a violation of the health care provider's professional duty to exercise care which are within the Act.

Count I of appellants' declaration clearly sounds in traditional assault and battery terms and alleges an *intentional, malicious, wanton* and *reckless* act. In no way can it be said that the legislature intended such a claim to be within the Act even though such action took place during the rendering of health care.

Likewise, Count III depends for its validity on the actions described in the assault and battery count which, again, are described as "intentional, reckless, extreme and outrageous." [5]

In *Cannon, supra,* we remanded the case without affirmance or reversal because the declaration was too sparse to allow us to determine whether those claims were within the Act. In the instant case, we are able to determine that none of the counts are within the Act and thus we shall reverse and remand the case to proceed as a normal tort case.

> *Judgment reversed; case remanded for trial; costs to be paid by appellees.*

[5]. We do not mean hereby to indicate that all intentional torts of a professional nature are not covered by the Act as there may well be many such acts that would be so covered.