587 A.2d 474

**Marlene K. JEWELL**

v.

**Raymond L. MALAMET.**

**No. 77, Sept. Term, 1990.**

Court of Appeals of Maryland.

March 25, 1991.

Arthur Schneider (Day and Schneider, P.A., both on brief), Hagerstown, for appellant.

Conrad W. Varner (Karen J. Krask, Miles & Stockbridge, all on brief) Frederick, for appellee.

J. Joseph Curran, Jr., Atty. Gen. and C.J. Messerschmidt, Asst. Atty. Gen., Baltimore, amicus curiae, for MD Health Claims Arbitration Office.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Jr. and MARVIN H. SMITH, Judges of the Court of Appeals (retired), Specially assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

## I

Some fifteen years ago the General Assembly of Maryland created an elaborate scheme for the arbitration of medical malpractice claims.  It is set out in the Maryland

Code (1974, 1989 Repl.Vol.) of the Courts and Judicial Proceedings Article as subtitle 2A of title 3 under the heading "Health Care Malpractice Claims" (the Act).[1] Starting in § 3–2A–01 with definitions, the Act, in succeeding sections through § 3–2A–09, covers the exclusiveness of its procedures; the establishment of a Health Claims Arbitration Office, headed by a Director; the procedure for filing claims, the appointment of arbitrators and their immunity from suit; the arbitration of a claim; judicial review by an aggrieved party; waiver of arbitration; award of costs and counsel fees; and the effect of advance payment.

We traced the history of the Act in *Attorney General v. Johnson,* 282 Md. 274, 280–281, 385 A.2d 57 (1978), *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). In *Oxtoby v. McGowan,* 294 Md. 83, 86, 447 A.2d 860 (1982), we noted, "In general, the Act requires certain medical malpractice claims to be submitted to an arbitration panel for initial ascertainment of liability and damages before resort may be had to a court of law for final determination." We emphasized that

> [t]he Act, however, does not take away the subject matter jurisdiction of a circuit court to hear and render judgments in cases involving claims which fall within the Act.

*Id.* at 91, 447 A.2d 860. We quoted the observation of *Johnson,* 282 Md. at 283–284, 385 A.2d 57, that

> "[T]his statute, which in essence requires that malpractice disputes be submitted to nonbinding arbitration" creates "a condition precedent to the institution of a court action. . . ."

*Oxtoby,* 294 Md. at 91, 447 A.2d 860. We warned:

> But the General Assembly has forcefully expressed in § 3–2A–02(a) its intent that this condition precedent be

---

1. Hereinafter in this opinion, section citations refer to title 3, subtitle 2A of the Courts and Judicial Proceedings Article of the Maryland Code (1974, 1989 Repl.Vol.) unless otherwise indicated.

satisfied. ("An action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle.")

*Id.*

In *Cannon v. McKen*, 296 Md. 27, 459 A.2d 196 (1983), we divined the legislative intent. It seemed patent to us that, by enacting the statute, the Legislature was "reacting to a medical malpractice insurance 'crisis.'" *Id.* at 34, 459 A.2d 196. It was, therefore, clear to us that

the Legislature intended to include in the scope of the Act only those claims for damages done to or suffered by a person originating from, in pertinent part, the giving of or failure to give health care.

*Id.* It was our view that

the Legislature did not intend that claims for damages against a health care provider, arising from non-professional circumstances where there was no violation of the provider's professional duty to exercise care, to be covered by the Act. It is patent that the Legislature intended only those claims which the courts have traditionally viewed as professional malpractice to be covered by the Act.

*Id.* We held that

the Act covers only those claims for damages arising from the rendering or failure to render health care where there has been a breach by the defendant, in his professional capacity, of his duty to exercise his professional expertise or skill.

*Id.* at 36, 459 A.2d 196. We observed:

Those claims for damages arising from a professional's failure to exercise due care in non-professional situations such as premises liability, slander, assault, etc., were not

intended to be covered under the Act and should proceed in the usual tort claim manner.

*Id.* at 36–37, 459 A.2d 196.

## II

### A

Raymond L. Malamet, M.D., filed a preliminary motion for dismissal of the civil action instituted against him in the Circuit Court for Washington County by Marlene K. Jewell. Upon a hearing on the motion, it appeared to the judge that the matter was properly for arbitration under the Act. He dismissed the action. Jewell appealed. We ordered the issuance of a writ of certiorari on our own motion before decision by the Court of Special Appeals. We are called upon to determine the propriety of the dismissal.

### B

It is not disputed that Jewell's employer referred her to Malamet, a physician practicing in the field of rheumatology. Malamet was to make a medical evaluation of Jewell's physical disability resulting from apparently job-related chronic musculoskeletal pain. Malamet conducted a physical examination of her on two occasions. On the first occasion, as set out in Count I of Jewell's amended complaint,[2]

[W]hile during the course of a scheduled medical examination, Malamet, intentionally, wrongfully, willfully, maliciously and violently assaulted and did batter Jewell, by then and there physically sexually abusing her and battering her. During the course of the examination, Jewell was taken into an examining room and given a gown to get into. The nurse then left the room and at no time during the examination did the nurse return. Jewell was requested to sit on a chair and talk with Malamet for

2. We have substituted the respective surname of the parties in lieu of "plaintiff" and "defendant." Otherwise the allegations in the complaint are set out verbatim.

about five (5) minutes while he took notes of her medical history and related problems. Upon completion of the history, the doctor asked Jewell to get onto a table and lie on her back. He then examined her over her body as a whole. While the gown was completely pulled up, he then started to push on Jewell's stomach and then around her groin muscles. After pushing on the groin muscles and saying "is that sore, is that sore," he then started to fondle her around the lips of her vagina. Malamet inserted his finger up into the vagina, not wearing a rubber glove or any protective equipment, and then continued asking if Jewell was sore.

The second occasion, Count II of the complaint alleged, occurred almost five weeks later. Jewell

was again scheduled for a medical examination by Malamet. Malamet, during the aforesaid examination, intentionally, wrongfully, willfully, maliciously, and violently assaulted and did batter Jewell, by then and there physically sexually abusing her and battering her. Jewell, again, was taken into the examination [room] of Malamet without any nurse or other witnesses. Jewell was requested to sit on the examination table. Malamet asked what problems, if any, Jewell was having. Malamet did then pull out the extension on the examination table and asked Jewell to stand on her feet. Jewell then was requested to remove her sweatpants and underpants down below the midway of her thighs. Malamet then instructed Jewell to lie down and to turn over. Malamet then requested Jewell to bring her knees up under her and at which point Malamet fondled Jewell by touching her in her vaginal region of the body. Malamet felt and touched the buttocks area as well as the vagina of Jewell and then inserted his finger in her vagina. Malamet continued to fondle Jewell. Malamet did not have on a rubber glove or any other protective equipment. Jewell then was instructed to sit up. Malamet then questioned Jewell to determine if there was any pain in the muscles and area of the chest. Malamet then stood up, took both of his hands up under the sweatshirt of Jewell, and under the

bra of Jewell, and pulled both the sweatshirt and the bra away from the breasts of Jewell and did proceed to fondle both breasts of Jewell.

There was an allegation in separate paragraphs of each count that the "assault and battery occurred during the course of a scheduled medical examination" and that Jewell "sustained injuries and underwent great emotional pain and suffering without any negligence on her part contributing thereto."

## III

Pertinent to the resolution of this case are the prescriptions regarding the exclusiveness of the Act's procedures and two of the definitions set out in the Act. Section 3–2A–02(a)(1), under the heading, "Claims and actions to which subtitle applicable," provides:

All claims, suits, and actions, including cross claims, third-party claims, and actions under Subtitle 9 of this title, by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle.

Paragraph 2, subsection (a), § 3–2A–02 declares:

An action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle.

Section 3–2A–09 warns, however:

The provisions of this subtitle shall be deemed procedural in nature and shall not be construed to create, enlarge, or diminish any cause of action not heretofore existing, except the defense of failure to comply with the procedures required under this subtitle.

Section 3–2A–01(e) includes among the designations of a "health care provider," a "physician ... licensed or authorized to provide one or more health care services in Maryland." It is not disputed that Malamet was a health care provider subject to the Act. "Medical injury," according to

§ 3–2A–01(f), "means injury arising or resulting from the rendering or failure to render health care." The term "health care" is not defined, nor is the term "health care services."

IV

A

The hearing conducted by the court on Malamet's motion to dismiss was not plenary. Only the pleadings and arguments of counsel were before the court. The hearing concluded on this comment by the judge:

> It seems to be a question of whether checking out the vaginal area is something that is normally done in the examination by this kind of physician for the purposes for which the lady is there. You have some other facts in the second incident. If this case were purely brought on this first incident it would be out. But you have some additional facts in the second incident of I guess the method that was used, not only the vaginal area but also the breasts.

The judge held the matter under consideration, although he was "almost persuaded that you're in the wrong place." Upon consideration, it appeared to the judge that the court should not exercise jurisdiction in the light of the Health Care Malpractice Claims Act. He explained his conclusion in a memorandum opinion accompanying his order dismissing the action.

The judge began with a brief discussion of the exclusive features of the Act:

> The determination of jurisdiction in cases involving an intentional tort of a professional nature lies not in an examination of the label given to the tort alleged by the plaintiff, but on the factual context in which the tort was allegedly committed.... When professional skill is involved, the claim is arbitrable irrespective of its theory; if health care is or should be rendered and damage results therefrom, then it is a claim under the Act and must first be arbitrated.... What is the aggregate of operative

facts giving rise to the action? Does the thrust of the suit concern the exercise of professional skill or expertise?

(Citations omitted). He then summarized the allegations in the complaint:

As pointed out by [Jewell], this claim concerns two office visits to a rheumatologist for the purpose of medical examinations scheduled by an insurance carrier to determine the nature and extent of [her] physical disability. She alleges that during the first examination [Malamet] pushed on her stomach and around her groin, asking "Is that sore, is that sore?" and then started to fondle the lips of her vagina, inserting his finger, and continued asking if she was sore; during the second visit Dr. Malamet "touched" Jewell in the vaginal region and buttocks area, again inserted his finger into her vagina and after asking whether there was muscle pain in the chest, "fondled" [Jewell's] breasts.

He opined:

[Jewell] characterizes the physician's actions as sexual abuse or assault. However considering the purpose and extent of the examinations—to determine discomfort and disability caused by rheumatic conditions of the muscles, tendons, joints, bones or nerves by a professional health care provider—the "aggregate of operative facts" should be weighed by an Arbitration Panel for its judgment as to whether there has been a violation of this doctor's duty to exercise care. Under the totality of the circumstances, it is this Court's opinion that the Amended Complaint claims damages done to or suffered by Mrs. Jewell originating from, and in pertinent part, the rendering of health care. Consequently jurisdiction is reserved to the [Health Claims Arbitration Office] under the Act.

Whereupon, the judge dismissed the action.

## B

We agree with the trial judge that "[t]he determination of jurisdiction in cases involving an intentional tort

of a professional nature lies not in ... the label given to the tort ..., but on the factual context in which the tort was allegedly committed." And, we do not believe that the mere fact that the challenged conduct arose during the course of a consensual physical examination by a physician is decisive of jurisdiction. In short, the resolution of the issue here is to be determined by whether Jewell's claims were for a "medical injury."

In *Cannon*, while the patient was receiving treatment, a part of the dental chair in which she was seated and an x-ray wall attachment broke loose and fell on her. She brought an action in a circuit court against the doctor. The complaint contained counts sounding in negligence, strict liability in tort, and breach of warranty. The doctor filed a motion to dismiss the action. The motion was granted. A majority of the Court expressed the view that

> the pleadings simply are too sparse to allow a determination whether Mrs. Cannon's injury arose because of the defendant's breach of his professional duty owed her or because of a breach of duty which he may have owed her as a premises owner or in some other non-professional capacity.

*Id.* at 37–38, 459 A.2d 196. We explained:

> We believe the pleader must allege sufficient facts to make clear the theory upon which the alleged liability is based. It is a basic rule of law that where a cause of action is dependent upon a condition precedent, plaintiff must allege performance of such condition or show legal justification for nonperformance. If the declaration fails to contain such allegations, defendant can object by demurrer or plea.

*Id.* We related our belief to the case before us:

> In this case, as we so clearly indicated in *Oxtoby v. McGowan, supra,* arbitration of malpractice disputes, in appropriate cases, has been deemed to be a condition precedent to instituting court action. 294 Md. at 91, 447 A.2d at 865. Accordingly, performance of this condition

precedent must be alleged or legal justification for non-performance must be shown.

*Id.* We concluded:

Accordingly, we shall remand this case to the Circuit Court for Prince George's County under [then] Rule 871 for further proceedings as necessary to allow the plaintiffs to plead facts which show whether or not their claim falls within the Act.

*Id.* (footnote omitted). We provided guidelines for the trial court:

If, after further pleadings, the trial court determines that Mrs. Cannon's injury allegedly occurred as a result of Dr. McKen's breach of his professional duty owed her, the matter is arbitrable and the motion raising preliminary objection should be sustained. On the other hand, if the trial court determines the injury allegedly arose from a breach of duty owed in a non-professional capacity, the claim is not subject to arbitration and the motion raising preliminary objection should be denied.

*Id.* at 38–39, 459 A.2d 196.

In *Nichols v. Wilson*, 296 Md. 154, 460 A.2d 57 (1983), we were again called upon to determine what type of claim against a health care provider the Act encompasses. The child-patient was admitted to a hospital for suture removal from her cheek. While she was held down to immobilize her, the doctor slapped her on her face. An action was brought containing counts of assault and battery, negligence, and intentional infliction of emotional distress. The allegations were that the doctor, "without provocation, ... intentionally, violently, maliciously, wantonly and recklessly" struck the child "with great force." *Id.* at 156, 460 A.2d 57. The defendants' motion to dismiss on the ground that "the claims being pursued were such as to be within the coverage of the Act," was granted. *Id.* at 156–157, 460 A.2d 57. We found *Cannon* "in large measure" to be dispositive. *Id.* at 155, 460 A.2d 57. We noted that

it is only those claims for damages where there has been a violation of the health care provider's professional duty to exercise care which are within the Act.

*Id.* at 161, 460 A.2d 57. We said that the assault and battery count clearly sounded "in traditional assault and battery terms and alleges an *intentional, malicious, wanton* and *reckless* act." *Id.* (emphasis in original). "In no way," we posited, "can it be said that the Legislature intended such a claim to be within the Act even though such action took place during the rendering of health care." *Id.* "Likewise," we observed, "[the intentional infliction of emotional distress count] depends for its validity on the actions described in the assault and battery count...." *Id.* We proclaimed that, unlike *Cannon,* in *Nichols* we were able to determine whether those claims were within the Act. *Id.* Since we determined that "none of the counts [were] within the Act," we reversed and remanded the case "to proceed as a normal tort case." *Id.*

In the case before us, Jewell seeks a reversal of the judgment granting the motion to dismiss the action. She claims that the action is not within the ambit of the Act. She wants the case to proceed forthwith in the circuit court. Malamet implores us to affirm the judgment of the circuit court. He asserts that the action is subject to the Act. He would have the claim resolved by arbitration. We permitted the Health Claims Arbitration Office to file a brief as *amicus curiae.* It sides with Jewell. It believes that the matter is not within its jurisdiction, and requests that the judgment of the circuit court be reversed so that the action may be tried in that court, not arbitrated.

## V

Unlike *Nichols,* the claims here as alleged do not support a view that "in no way can it be read that the Legislature intended them to be within the Act." We simply are unable to reach that conclusion. In the face of the allegations, we cannot say, as a matter of law, that the claims as set out were not for medical injury allegedly suffered by Jewell.

In oral argument before us we attempted to have Malamet's counsel constate his intention: did he plan to defend against the action by a denial of the allegations of the complaint, or did he plan to offer medical testimony tending to show that the insertion of Malamet's finger in Jewell's vagina and the touching of her breasts were not a departure from the standard of care in a physical examination to determine the extent of disability arising from chronic musculoskeletal pain. In other words, would counsel attempt to establish that the "fondling" of the lips of Jewell's vagina by Malamet and the insertion of his finger therein, and the "fondling" of her breasts by him, were undertaken as an exercise of professional skill necessary to satisfy the object of the examination, rather than indulged in by Malamet to gratify his sexual desires. Counsel was obviously reluctant to commit himself, but when directly asked, "Are you going to have some physician say that a digital penetration of the vagina is a part of this exam?" he replied, "No, we're going to have testimony consistent with what the physician will say, that there was an external pelvic examination...." He was asked, "Then the answer to my question is 'no'." He replied, "That's correct." Later during counsel's argument, pressed by the Court, he indicated that the touching of the breasts was a proper part of the examination, giving the clear implication that medical testimony would be adduced to establish that this was so. The Court pursued this line of inquiry because if counsel had conceded that the conduct complained of had no conceivable validity as part of the examination being conducted, the resolution of the case would be for the trier of fact in the circuit court as an action for assault and battery, not as a medical malpractice action for the arbitration panel. It is in the absence of such a concession, that we are unable to conclude, as a matter of law, that the allegations as voiced are not subject to the Act.

The impasse here is not to be surmounted by remanding the case for further amendment of the complaint as we did in *Cannon*. Jewell drew the complaint and amended it

after a motion was granted to dismiss the original complaint. Inasmuch as we cannot say that the allegations suffice to take it out of the Act, the proper initial forum is that provided under the Act. For Jewell to have her claims resolved, she must first satisfy the condition precedent by resorting to arbitration pursuant to the Act. Although we are in accord with the trial judge that the matter of Jewell's claims is reserved at this time to the Health Claims Arbitration Office under the Act, we think that the judge erred in dismissing the action. In all fairness, the tort case in the circuit court must be kept alive pending the outcome of the arbitration proceedings to prevent the running of limitations. If it is determined in those proceedings that it is proper to proceed under the Act, the case will proceed by way of arbitration. If it is determined that the case is not within the Act, the case may proceed in the circuit court in the usual tort claim manner. Therefore, we vacate the judgment of the circuit court and remand with direction to stay the proceedings in that court pending the outcome of proceedings under the Act.

JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY VACATED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO STAY THE PROCEEDINGS OF THAT COURT PENDING THE OUTCOME OF PROCEEDINGS IN THE HEALTH CLAIMS ARBITRATION OFFICE;

COSTS TO BE PAID ONE-HALF BY APPELLANT AND ONE-HALF BY APPELLEE.