664 A.2d 422

**John A. LANGWORTHY**

v.

**Juvenal R. GOICOCHEA.**

No. 1806, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Sept. 5, 1995.

Certiorari Granted Nov. 28, 1995.

266

John A. Langworthy, of N. Potomac, pro se.

Amy T. Roberts (W. Scott Sonntag and DeCaro, Doran, Siciliano, Gallagher, Sonntag & DeBlasis, on the brief), Lanham, for appellee.

Argued before BISHOP, ALPERT and WENNER, JJ.

BISHOP, Judge.

On December 22, 1993, appellant, John A. Langworthy, filed a claim with the Health Claims Arbitration Office of Maryland ("HCAO") against appellee, Juvenal R. Goicochea, M.D. On April 11, 1994, Langworthy filed a complaint for assault and battery against Goicochea in the Circuit Court for Montgomery County. Langworthy claimed $300,000 in damages. On April 14, 1994, the HCAO granted Langworthy a ninety-day extension to file a certificate of merit of qualified expert. Langworthy failed to file the requisite certificate and the HCAO dismissed Langworthy's claim. On April 22, 1994, Goicochea filed a motion to dismiss Langworthy's circuit court action, asserting that the court lacked jurisdiction because Langworthy had failed to arbitrate his claim before the HCAO. The circuit court granted Goicochea's motion. Langworthy filed a motion for reconsideration which the circuit court denied. On August 11, 1994, Langworthy filed an amended complaint. Subsequently, Goicochea filed a motion to strike the amended complaint, which the circuit court granted.

## Issues

Langworthy presents numerous issues, which we rephrase and consolidate into a single issue: Did the trial court properly dismiss Langworthy's complaint for lack of jurisdiction?

## Facts

In his original complaint, Langworthy made the following allegations:

1. On November 27, 1992, ... against Plaintiff's will and without the Plaintiff's consent, the Defendant intentionally assaulted and battered Plaintiff's left inguinal area with the full force of Defendant's left forefinger for approximately five (5) minutes.

2. This assault and battery by the Defendant has inflicted a permanently painful injury in Plaintiff's left groin.

3. This assault and battery was aggravated by Defendant's malice to physically hurt the Plaintiff.

4. On November 27, 1992, Plaintiff had verbally contracted with Defendant for Defendant to provide Plaintiff with a routine hernia examination and surgical consultation for two hundred dollars ($200.00). As a licensed general surgeon in the State of Maryland, the Defendant intentionally violated this contract by Defendant's intentionally hurting and permanently injuring Plaintiff's left groin as described in paragraphs 1–3 above.

Wherefore, Plaintiff sues Defendant in the amount of three hundred thousand dollars ... for the permanent physical pain and suffering inflicted by Defendant....

The circuit court ruled that, pursuant to Maryland law, "compliance with the Health Claims Malpractice Act is a condition precedent to court action[,]" and dismissed the complaint. The court stated:

It is clear to the Court from a review of case law that [Langworthy's] cause of action should first be submitted to arbitration before the [HCAO]. In *Jewell v. Malamet,* 322 Md. 262 [587 A.2d 474] (1991), a case factually similar to the one at bar, the Court held that in the absence of a concession that the conduct complained of had no conceivable validity as part of the examination being conducted, the Court could not conclude, as a matter of law, the allegations were not subject to the Act. Similarly, in the instant case the Court cannot determine that Langworthy's allegations suffice to take the complaint outside the Act.

In the typical case when the Circuit Court determines that the [HCAO] should first hear a case, the Circuit Court

should stay the proceedings before it pending the outcome of arbitration. However, in the instant case the Health Claims Arbitration Office dismissed [Langworthy's] action for his failure to file a Certificate of Merit of a Qualified Expert.

&ast; &ast; &ast; &ast; &ast; &ast;

In the instant case, [Langworthy's] failure to file the required Certificate of Merit under Section 3–2A–04 is fatal to his case. Because the Health Claims Arbitration Office dismissed [Langworthy's] case for his noncompliance, it is clear that [Langworthy] has not exhausted his administrative remedies. It would be inappropriate for the Circuit Court to stay this action when the Health Claims Arbitration Office has dismissed the case for failure to follow the proper procedures.

## Discussion

Langworthy contends that the circuit court has jurisdiction to hear his case because his complaint alleges assault and battery and therefore his claim is not within the scope of the Health Claims Malpractice Act ("the Act"). The Act requires that

> [a]ll claims, suits, and actions, including cross claims, third-party claims, and actions under Subtitle 9 of this title, by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle.

Md.Cts. & Jud.Proc.Code Ann., § 3–2A–02(a) (Supp.1994). A medical injury is defined as an "injury arising or resulting from the rendering or failure to render health care." *Id.* § 3–2A–01(f).

In *Brown v. Rabbitt,* 300 Md. 171, 476 A.2d 1167 (1984), the Court clarified the legislature's intent regarding the scope of the Act:

[I]t was clear to us that the legislature intended to include in the scope of the Act only those claims for damages done to or suffered by a person originating from the giving of or failure to give health care. Thus the critical question is whether the claim is based on the rendering or failure to render health care and *not the label placed on the claim, that is, tort or contract.* If health care is or should have been rendered and damage results therefrom, then it is a claim under the Act and must first be arbitrated.

*Id.* at 175, 476 A.2d 1167 (emphasis added).

Similarly, in *Jewell v. Malamet,* 322 Md. 262, 587 A.2d 474 (1991), the Court discussed the "elaborate scheme for the arbitration of medical malpractice claims[,] . . . set out in the Maryland Code (1974, 1989 Repl.Vol.) of the Courts and Judicial Proceedings Article as subtitle 2A of title 3 . . . ." *Id.* at 264–65, 587 A.2d 474. The Court held that " 'the Act covers only those claims for damages arising from the rendering or failure to render health care where there has been a breach by the defendant, in his professional capacity, of his duty to exercise his professional expertise or skill.' " *Id.* at 266, 587 A.2d 474 (quoting *Cannon v. McKen,* 296 Md. 27, 36, 459 A.2d 196 (1983)).

In *Jewell,* the appellant filed a complaint against her doctor for sexual abuse and assault. When it dismissed the appellant's complaint the circuit court ruled:

[The appellant] characterizes the physician's actions as sexual abuse or assault. However considering the purpose and extent of the examinations—to determine discomfort and disability caused by rheumatic conditions of the muscles, tendons, joints, bones or nerves by a professional health care provider—the "aggregate of operative facts" should be weighed by an Arbitration Panel for its judgment as to whether there has been a violation of this doctor's duty to exercise care.

*Id.* at 271, 587 A.2d 474.

The Court agreed with the circuit court that " '[t]he determination of jurisdiction in cases involving an intentional tort of

a professional nature lies not in . . . the label given to the tort . . ., but on the factual context in which the tort was allegedly committed.' " *Id.* at 271–72, 587 A.2d 474. The Court noted that, in oral argument, it asked the doctor's attorney whether he planned to defend against the patient's action by

> a denial of the allegations of the complaint, or did he plan to offer medical testimony tending to show that the insertion of [the doctor's] finger in [the patient's] vagina and the touching of her breasts were not a departure from the standard of care in a physical examination to determine the extent of disability arising from chronic musculoskeletal pain.

*Id.* at 275, 587 A.2d 474. The Court explained that it pursued this line of inquiry because,

> if counsel had conceded that the conduct complained of had no conceivable validity as part of the examination being conducted, the resolution of the case would be for the trier of fact in the circuit court as an action for assault and battery, not as a medical malpractice claim action for the arbitration panel.

*Id.* The Court stated that, in the absence of such a concession, it could not conclude, as a matter of law, that the appellant's allegations were not subject to the Act. *Id.* In the case *sub judice*, the circuit court determined that, like the Court in *Jewell*, it could not tell whether Langworthy's allegations sufficed to take the complaint outside of the Act.

We agree with Langworthy that some actions are not arbitrable under the Act. For example, in *Nichols*, we stated that the appellants' declaration "clearly sounded in traditional assault and battery terms and alleged an *intentional, malicious, wanton,* and *reckless* act," and that the legislature did not intend "such a claim to be within the Act even though such action took place during the rendering of health care." 296 Md. 154, 161, 460 A.2d 57 (1983). Similarly, according to the Court in *Jewell*, "the mere fact that the challenged conduct arose during the course of a consensual physical examination by a physician is [not] decisive of jurisdiction. . . . [T]he resolution of the issue . . . is to be determined by whether [the

appellant's] claims were for a 'medical injury.'" *Jewell,* 322 Md. at 272, 587 A.2d 474.

Although the documents were not included in the Record Extract, we reviewed the Claim Form and attachments that Langworthy filed with HCAO. In that claim, Langworthy asserted that Goicochea had given him "an extremely painful hernia examination by inserting his left forefinger with full force into [Langworthy's] left inguinal area for approximately five minutes." Langworthy attached to his claim a letter from his personal physician, Alan R. Sheff, M.D. In his letter, Dr. Sheff stated:

> This letter is written at the request of my patient, John Langworthy, who believes he has liable cause for a suit against [Goicochea]. His claim is based on a painful exami- nation by Dr. Goicochea following which Mr. Langworthy has continued to complain of pain in the left groin. I am unable to find any evidence of a physical injury although the patient insists that he still has pain in the area.

The HCAO dismissed Langworthy's claim because Dr. Sheff's letter did not meet the requirements of "a certificate of a qualified expert" as defined in § 3–2A–04(b)(1)(i), which pro- vides that the certificate must contain a qualified expert's attestation "to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury...."

Although Dr. Sheff's letter indicates that Langworthy has neither a medical malpractice claim nor a claim for assault and battery against Goicochea, "[o]ur task is to determine whether the torts alleged here are among those intentional torts that are covered by the Act." *Long v. Rothbaum,* 68 Md.App. 569, 575, 514 A.2d 1223 (1986). In *Long,* we determined that the appellant's claims of false imprisonment and intentional inflic- tion of emotional distress were "medical injuries" within the meaning of the Act because the cause of action arose out of the medical treatment itself and other violations of mandated health care standards. In *Nichols,* however, the Court of Appeals held that the cause of action did not fall within the

purview of the Act. There, the doctor, who was about to remove sutures from a child's cheek, slapped the child and was sued by the child's parents for assault and battery. The Court stated that "the cause of action (the slap) did not arise from a negligent, reckless, or unnecessary suture removal. Rather, the slap was a gratuitous act that obviously was not part of the medical treatment." *Long,* 68 Md.App. at 577, 514 A.2d 1223 (citing *Nichols, supra*).

In *Long v. Rothbaum,* we observed that, when two separate proceedings are involved, the pending common law action should not be dismissed so that the requisite special statutory proceeding may be implemented and completed; rather, it was our intention that the common law action be held in abeyance until the disposition of the statutory proceeding. *Long,* 68 Md.App. at 579–80, 514 A.2d 1223. In the case *sub judice,* Langworthy claims that the circuit court has jurisdiction over his complaint because Goicochea's rough and injurious examination of his left groin area constituted a gratuitous act that obviously was not part of the medical treatment, *i.e.,* the routine hernia examination. The circuit court granted Goicochea's motion to dismiss without deciding whether the alleged rough and injurious hernia examination was a gratuitous act and, possibly, an assault and battery. Similarly the HCAO never determined whether Langworthy's claim arose out of a medical injury or an assault and battery; the HCAO dismissed Langworthy's claim for failure to file a certificate of merit of qualified expert. If Goicochea's examination of Langworthy constituted an assault and battery, Langworthy would be unable to obtain a certificate of merit of qualified expert for the purpose of the Act because, if an examining physician determines that the act alleged was an assault and battery, the physician would be unable to certify that a departure from the standards of care proximately caused the alleged injury. Section 3–2A–04(b)(1)(i). Section 3–2A–01(f) of the Act provides that " 'Medical Injury' means arising or resulting from the rendering or failure to render health care." There must be a breach of a professional duty.

In *Nichols v. Wilson,* the Court quoted the following from *Cannon v. McKen,* 296 Md. 27, 459 A.2d 196 (1983):

"Thus, it seems patent the legislature, by enacting the pertinent legislation, was reacting to a medical malpractice insurance 'crisis' which was recognized as only partially resolved by creation of the Medical Mutual Liability Insurance Society of Maryland. It therefore is clear to us that the legislature intended to include in the scope of the Act only those claims for damages done to or suffered by a person originating from, in pertinent part, the giving of or failure to give health care. *See also Oxtoby v. McGowan,* 294 Md. 83, 447 A.2d 860 (1982). In our view, the legislature did not intend that claims for damages against a health care provider, arising from non-professional circumstances where there was no violation of the provider's professional duty to exercise care, to be covered by the Act. It is patent that the legislature intended only those claims which the courts have traditionally viewed as professional malpractice to be covered by the Act." *Nichols,* 296 Md. at 160, 460 A.2d 57 (quoting *Cannon,* 296 Md. at 34, 459 A.2d 196.)

Based on the foregoing, we conclude that a wilful and deliberate act other than one usually involved in medical treatment or examination on the part of the physician, such as an assault and battery, does not qualify as a "medical injury" as defined by the Act. A wilful and deliberate act to assault and batter is not a breach of a professional duty because a professional duty is one *required* in the proper exercise of the profession.

In *Jewell,* the Court instructed the parties to return to the HCAO so that the HCAO could determine whether the claim fell within the ambit of the Act, before proceeding with the tort claim in the circuit court. The Court's holding in *Jewell* creates a curious situation. Under *Jewell,* when a claimant is injured while receiving medical care, the claimant must file with the HCAO, which then determines whether the claim arises out of a medical injury; however, in order to file a claim with the HCAO, the claimant must file a certificate of merit of

qualified expert. If the claim is unquestionably one for assault and battery, then the claimant will be unable to obtain a certificate of merit of qualified expert. Under the Act, if the claimant fails to file a certificate of merit of qualified expert, then the HCAO can not hear the case. Therefore, a claimant with a legitimate assault and battery claim will never be able to have his case heard.

■ Following the Court's direction in *Jewell* and *Cannon*, we hold that, because Langworthy asserts that his claim is one for assault and battery, the circuit court should determine whether Langworthy's claim is based on an alleged gratuitous act that obviously was not part of the medical treatment. If the circuit court determines that Langworthy's claim arises out of the rendering or failure to render health care, then it should dismiss the case for lack of jurisdiction; if the circuit court determines that Langworthy's claim is one for assault and battery, then the case should proceed in the circuit court.

**JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY THE COSTS.**