694 A.2d 474

**Juvenal R. GOICOCHEA**

v.

**John A. LANGWORTHY.**

**No. 106, Sept.Term, 1995.**

Court of Appeals of Maryland.

June 6, 1997.

Reconsideration Denied June 26, 1997.

720

Amy T. Roberts and James Cardea (W. Scott Sonntag, on brief), Lanham, for Petitioner.

John A. Langworthy, North Potomac, in Pro. Per., Respondent.

Argued before MURPHY,* C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

ELDRIDGE, Judge.

The issue before us is whether a civil claim that a licensed Maryland physician committed an assault and battery on a patient during a routine medical examination, under the circumstances presented by this case, is covered by the Maryland Health Care Malpractice Claims Act, Maryland Code (1974, 1995 Repl.Vol.), §§ 3–2A–01 through 3–2A–09 of the Courts and Judicial Proceedings Article. We shall answer

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

this question in the affirmative and shall reverse the judgment of the Court of Special Appeals.

## I.

The petitioner, Dr. Juvenal R. Goicochea, performed a hernia examination on the respondent, John A. Langworthy, to determine the source and cause of pain in Langworthy's groin area. Langworthy consented to this examination, which occurred at Goicochea's office in Bethesda, Maryland. In the weeks and months following the examination, Langworthy complained of persistent pain and discomfort in his groin area. He filed a medical malpractice claim with the Health Claims Arbitration Office (HCAO) pursuant to the Health Care Malpractice Claims Act, alleging that Goicochea's performance of the hernia examination resulted in chronic pain, abnormal swelling, and the laceration of soft tissue in his groin area. He did not, however, file a qualified expert's certificate of merit with the HCAO as required by § 3–2A–04(b)(1) of the Act.[1] The HCAO, therefore, dismissed the claim.

Prior to the HCAO's dismissal of his malpractice claim, however, Langworthy filed the instant assault and battery action against Goicochea in the Circuit Court for Montgomery County, requesting compensatory and punitive damages. In

---

1. Section 3–2A–04(b) of the Courts and Judicial Proceedings Article states:

"(b) *Filing and service of certificate of qualified expert.*—Unless the sole issue in the claim is lack of informed consent:

(1)(i) Except as provided in subparagraph (ii) of this paragraph, a claim filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant fails to file a certificate of a qualified expert with the Director [of the HCAO] attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint. . . .

(ii) In lieu of dismissing the claim, the panel chairman shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:

1. The limitations period applicable to the claim has expired; and
2. The failure to file the certificate was neither willful nor the result of gross negligence."

his complaint, Langworthy asserted that, during the hernia examination, Goicochea "intentionally assaulted and battered [his] left inguinal area with the full force of his left forefinger for approximately five minutes." Although he did not allege a precise motive for Goicochea's actions, Langworthy stated that the "assault and battery" was "malicious" and "willful," and resulted in "permanently painful injury."

Goicochea filed a motion to dismiss, arguing that, in light of the Health Care Malpractice Claims Act, the circuit court should not exercise jurisdiction over the action. Following a hearing, the circuit court, relying upon this Court's opinion in *Jewell v. Malamet*, 322 Md. 262, 587 A.2d 474 (1991), dismissed Langworthy's complaint. The circuit court pointed out that Langworthy claimed that he had been assaulted and battered during the rendering of medical treatment by a health care provider, and that the Health Care Malpractice Claims Act was therefore applicable unless the complaint's factual allegations removed the claim from the Act's coverage. The court held that Langworthy's factual allegations did not remove the claim from the statute's coverage. In addition, the circuit court reasoned that, by not filing the required certificate of merit, Langworthy had failed to pursue the special arbitration remedy prescribed by the Act. The court concluded that staying the tort action until the conclusion of arbitration proceedings under the Act would be inappropriate because the HCAO had already dismissed Langworthy's malpractice claim for failure to follow the proper procedures.

Langworthy appealed to the Court of Special Appeals which vacated the judgment of the circuit court. *Langworthy v. Goicochea*, 106 Md.App. 265, 664 A.2d 422 (1995). The Court of Special Appeals' holding, and its view of *Jewell v. Malamet*, *supra*, were set forth as follows (106 Md.App. at 274–275, 664 A.2d at 427):

"Based on the foregoing, we conclude that a wilful and deliberate act other than one usually involved in medical treatment or examination on the part of the physician, such as an assault and battery, does not qualify as a 'medical injury' as defined by the Act. A wilful and deliberate act to

assault and batter is not a breach of a professional duty because a professional duty is one *required* in the proper exercise of the profession.

"In *Jewell,* the Court instructed the parties to return to the HCAO so that the HCAO could determine whether the claim fell within the ambit of the Act, before proceeding with the tort claim in the circuit court. The Court's holding in *Jewell* creates a curious situation. Under *Jewell,* when a claimant is injured while receiving medical care, the claimant must file with the HCAO, which then determines whether the claim arises out of a medical injury; however, in order to file a claim with the HCAO, the claimant must file a certificate of merit of qualified expert. If the claim is unquestionably one for assault and battery, then the claimant will be unable to obtain a certificate of merit of qualified expert. Under the Act, if the claimant fails to file a certificate of merit of qualified expert, then the HCAO can not hear the case. Therefore, a claimant with a legitimate assault and battery claim will never be able to have his case heard."

Thereafter, Goicochea filed with this Court a petition for a writ of certiorari which we granted. *Goicochea v. Langworthy,* 340 Md. 649, 667 A.2d 897 (1995).

## II.

Goicochea argues that Langworthy's cause of action, despite its "assault and battery" label, alleges a "medical injury" and is subject to the Health Care Malpractice Claims Act and its requirements. He maintains that the complaint implicates the Act because Langworthy's injury was allegedly inflicted during the rendering of medical services, and that the complaint's factual allegations are insufficient to remove Langworthy's claim from the Act's coverage. Thus, according to Goicochea, the HCAO, and not the circuit court, should make the threshold determination whether Langworthy's assault and battery action is subject to the Act. In Goicochea's view, the Court of Special Appeals' holding "usurp[s] the power of the HCAO to

initially evaluate potential malpractice claims when a claimant fails to sufficiently allege conduct outside the Act in circuit court." Moreover, Goicochea maintains that the intermediate appellate court's decision allows a claimant to circumvent the Act entirely by filing a civil action in the circuit court alleging assault and battery if the claimant is unable or unwilling to procure the certificate of merit required by the Act. He asserts that this result makes the Act largely inapplicable, and the certification requirement meaningless, because both can be easily avoided.

Langworthy, on the other hand, argues that Goicochea intentionally and deliberately injured him under the pretext of providing medical treatment. He asserts that an intentional assault and battery committed by a health care provider against a patient can never be a "medical injury" and is therefore outside the scope of the Act. While conceding that he consented to the performance of the hernia examination, Langworthy maintains that Goicochea's intent to injure him stripped the examination of any medical validity. Finally, Langworthy argues that the intermediate appellate court correctly directed the circuit court, instead of the HCAO, initially to determine whether his assault and battery claim is subject to the Act.

## III.

■ Absent a waiver by the parties, the Health Care Malpractice Claims Act requires the submission of malpractice claims against health care providers to an arbitration proceeding as a condition precedent before maintaining a tort action in the circuit court.[2] *See, e.g., Goodwich v. Nolan,* 343 Md.

---

2. Section 3–2A–02 states, in pertinent part, as follows:
 "(a) *Claims and actions to which subtitle applicable.*—(1) All claims, suits, and actions, including cross claims, third-party claims, and actions under Subtitle 9 of this title, by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of concurrent jurisdiction of the District Court are sought are subject to and shall be governed by the provisions of this subtitle.

130, 151, 680 A.2d 1040, 1050 (1996); *Jewell v. Malamet, supra,* 322 Md. at 265, 587 A.2d at 475–476; *Tranen v. Aziz,* 304 Md. 605, 612, 500 A.2d 636, 639 (1985); *Bailey v. Woel,* 302 Md. 38, 41, 485 A.2d 265, 266 (1984); *Oxtoby v. McGowan,* 294 Md. 83, 91, 447 A.2d 860, 864–865 (1982); *Attorney General v. Johnson,* 282 Md. 274, 283–284, 385 A.2d 57, 63, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). *See also* the discussion of the Act by Judge Chasanow for the Court in *Newell v. Richards,* 323 Md. 717, 727–734, 594 A.2d 1152, 1157–1161 (1991). The Act is limited to claims against health care providers for medical injuries. The statute states that " '[m]edical injury' means injury arising or resulting from the rendering or failure to render health care." *See* § 3–2A–01(f). Thus, the critical question is whether Langworthy's injury from an alleged assault and battery constitutes a "medical injury" within the meaning of the Act.

In *Cannon v. McKen,* 296 Md. 27, 34, 459 A.2d 196, 200 (1983), this Court explained the definition of "medical injury" as follows:

> "[T]he legislature did not intend that claims for damages against a health care provider, arising from non-professional circumstances where there was no violation of the provider's professional duty to exercise care, to be covered by the Act. It is patent that the legislature intended only those claims which the courts have traditionally viewed as professional malpractice to be covered by the Act."

The Court went on to state that, in order to bypass the Act's arbitration requirement, a claimant "must allege sufficient facts to make clear the theory upon which the alleged liability

---

(2) An action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle."

In his complaint in the circuit court, Langworthy sought compensatory damages in the amount of $300,000 and punitive damages in the amount of $300,000 against Goicochea, amounts clearly exceeding the $20,000 maximum limit on the concurrent subject matter jurisdiction of the District Court. *See* §§ 4–401(1) and 4–402(d) of the Courts and Judicial Proceedings Article.

is based." *Cannon v. McKen, supra,* 296 Md. at 38, 459 A.2d at 202.

In *Nichols v. Wilson,* 296 Md. 154, 156 n. 2, 460 A.2d 57, 58 n. 2 (1983), a minor plaintiff, by her parents, filed a multi-count complaint in the circuit court alleging that an emergency room physician, "before" removing sutures from the plaintiff's cheek, "without provocation, . . . intentionally, violently, maliciously, wantonly and recklessly" struck the plaintiff "with great force" in the face. In assessing whether these factual allegations were sufficient to remove the claim from the Act's coverage, this Court held (*Nichols v. Wilson, supra,* 296 Md. at 161, 460 A.2d at 61):

> "[The plaintiff's] declaration clearly sounds in traditional assault and battery terms and alleges an *intentional, malicious, wanton* and *reckless* act. In no way can it be said that the legislature intended such a claim to be within the Act. . . ." (Emphasis in original).

We also stated, however, that intentional torts were not automatically excluded from the Act's coverage, and that "there may well be many [intentional torts] that would be so covered." 296 Md. at 161 n. 5, 460 A.2d at 61 n. 5.

*Jewell v. Malamet, supra,* 322 Md. 262, 587 A.2d 474, clarified the holding in *Nichols v. Wilson,* concerning the circumstances under which intentional torts, allegedly committed by health providers during the rendering of medical care, are covered by the Act. *Jewell* involved a plaintiff's allegation that a physician had "intentionally, wrongfully, willfully, maliciously and violently" assaulted and battered her by fondling her vaginal and breast areas during the course of two musculoskeletal examinations. This Court initially pointed out that " '[t]he determination of jurisdiction in cases involving an intentional tort of a professional nature lies not in . . . the label given to the tort . . ., but on the factual context in which the tort was allegedly committed.' " *Jewell v. Malamet, supra,* 322 Md. at 271–272, 587 A.2d at 479. *See also Brown v. Rabbitt,* 300 Md. 171, 175, 476 A.2d 1167, 1169 (1984) ("the critical question is whether the claim is based on the render-

ing or failure to render health care and not on the label placed on the claim"). The Court in *Jewell* went on to hold that, "[i]n the face of the allegations, we cannot say, as a matter of law, that the claims as set out were not for medical injury allegedly suffered by Jewell." 322 Md. at 274, 587 A.2d at 480. The Court noted, however, that it was possible for a plaintiff to allege facts showing that the health care provider's tortious conduct "had no conceivable validity as part of the examination being conducted," and thus "the resolution of the case would be for the trier of fact in the circuit court as an action for assault and battery, not as a medical malpractice action for the arbitration panel." 322 Md. at 275, 587 A.2d at 481. Nevertheless, we concluded in *Jewell* that, "[i]nasmuch as we cannot say that the allegations suffice to take [the claim] out of the Act, the proper initial forum is that provided under the Act." 322 Md. at 276, 587 A.2d at 481.

 Consequently, under *Jewell,* the determination of the proper initial forum for cases involving allegations of intentional torts committed by health care providers depends upon the factual context in which the tort was allegedly committed. Where a plaintiff alleges that he or she was injured by a health care provider during the rendering of medical treatment or services, the Act is implicated, regardless of whether the claim sounds in negligence or intentional tort. When confronted with such a claim, the trial court must determine if the plaintiff's factual allegations remove the claim from the Act's coverage. If the complaint sets forth facts showing that the claimed injury was not inflicted during the rendering of medical services, or that the injury resulted from conduct completely lacking in medical validity in relation to the medical care rendered, the Act is inapplicable, and the action may proceed without first resorting to arbitration.

Under our holding in *Jewell,* however, if the trial court is unable to conclude that the allegations remove the claim from the Act's coverage, the court should not exercise jurisdiction over the claim until a malpractice claim is filed with the

HCAO. The HCAO initially will determine if the claim alleges a "medical injury" and is therefore subject to the Act.

■■ The circuit court in the present case correctly held that Langworthy's allegations were insufficient to remove his claim from the coverage of the Health Care Malpractice Claims Act. Langworthy specifically alleged that Goicochea caused his groin injury by improperly conducting a hernia examination. Langworthy fails to set forth any factual basis upon which the circuit court could properly conclude that Goicochea's actions had no conceivable medical validity or were totally unrelated to the performance of a routine hernia examination. Obviously, Goicochea had to apply some measure of force to Langworthy's left groin area in order to ascertain the precise location of Langworthy's groin pain. The asserted cause of Langworthy's injury was that Goicochea allegedly applied too much force. This appears to fall in the category of a traditional malpractice action. A plaintiff may not remove a medical malpractice action from the ambit of the statute simply by adding the adjectives "malicious" or "willful." This case cannot be distinguished, on any principled basis, from *Jewell v. Malamet, supra.*

■ Normally, when a claim subject to the Act's requirements is filed in the circuit court, the court should stay the civil action pending the conclusion of arbitration proceedings. *See Jewell v. Malamet, supra,* 322 Md. at 276, 587 A.2d at 481. Where, however, a claim is dismissed by the HCAO because the plaintiff failed to follow the mandatory requirements of the Act, this Court has held that the plaintiff may not maintain a subsequent civil malpractice action against the health care provider in the circuit court. *See, e.g., Wyndham v. Haines,* 305 Md. 269, 273–274, 503 A.2d 719, 722 (1986); *Tranen v. Aziz, supra,* 304 Md. at 612–614, 500 A.2d at 639–640; *Bailey v. Woel, supra,* 302 Md. at 45, 485 A.2d at 268; *Oxtoby v. McGowan, supra,* 294 Md. at 91, 447 A.2d at 864–865.

Langworthy's malpractice claim against Goicochea was dismissed by the HCAO because he did not file the certificate of a qualified medical expert attesting to the merit of his claim,

as required by § 3–2A–04(b) of the Act. Therefore, staying the present civil action would serve no purpose. The circuit court correctly held that dismissal of the action was appropriate.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. RESPONDENT TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*