514 A.2d 1223

**Lewis E. LONG, Jr.**

v.

**Kenneth ROTHBAUM, et al.**

**No. 1553, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Sept. 9, 1986.

Lawrence P. Pinno, Jr., Joppa (Patrick P. Spicer of Bel Air, on the brief), for appellant.

David J. Norman (Donald L. DeVries, Jr. and Semmes, Bowen & Semmes, on brief), Baltimore, for appellees, The Taylor Psychiatric Professional Ass'n., Taylor, Sanford, B. Taylor, Pribadi, Law-Yone and Eglseder, M.D.

Paul Newhouse (Eccleston & Seidler, on brief), Baltimore, for appellee, Bauknight.

Barry Bach, Smith, Somerville & Case, Stanley B. Rohd, Shapiro & Olander, Baltimore, on brief, for other appellees.

Argued before MOYLAN and ADKINS*, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ADKINS, Judge, Specially Assigned.

Appellant, Lewis E. Long, Jr., asserts that the common law torts of false imprisonment and intentional infliction of emotional distress, and deprivations of liberty and other rights without due process actionable under 42 U.S.C. § 1983, are not "medical injuries" as defined in Courts and Judicial Proceedings Article § 3–2A–01(f).[1] Therefore, he argues, even though those wrongs were inflicted upon him by "health care provider[s]" as defined in § 3–2A–01(e), he should not be relegated to arbitration as a precondition to

---

\* Adkins, J., participated in the argument and conference of this case and although appointed to the Court of Appeals of Maryland, August 15, 1986, he is specially assigned to this Court with respect to all cases in which he was a member of the panel.

1. Unless otherwise noted, all statutory references are to sections of the Courts and Judicial Proceedings Article (1984 Repl.Vol. and 1985 Supp.).

seeking a judicial remedy against the appellee health care providers.

These contentions are before us as a result of Long's appeal from the Circuit Court for Baltimore County's dismissal of his action against appellees. The circuit court was of the view that the Health Care Claims Arbitration Act (§§ 3–2A–01 through 3–2A–09) applied and that arbitration was required by § 3–2A–02. It

ORDERED that the Motions to Dismiss [Long's] Complaint for failure to satisfy a condition precedent to invoking the subject matter jurisdiction of this Court be, and hereby are, granted.[2]

We hold that the circuit court did not err; we affirm its judgment.

The factual basis for Long's arguments may be gleaned from his complaint. Its well-pleaded facts are, of course, taken as true for purposes of a motion to dismiss under Md. Rule 2–322(b). *See Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618 (1985). Although the complaint contains 48 counts and names 16 defendants,[3] Long's wrongs may be grouped into two occurrences: the Franklin Square Hospital occurrence and the Taylor Manor Hospital occurrence.

The tale begins at Franklin Square. According to Long, on November 17, 1981, Toll Facilities police, improperly considering him to be a suicide risk, took him to Franklin Square Hospital. The officers left and Long tried to do likewise, but doctors and other agents of the hospital restrained him, subsequently drugged him, and still later caused him to be admitted involuntarily to a mental health facility. The Franklin Square doctors accomplished this by executing allegedly illegal documents entitled "Physician's

---

**2.** It is from this order that Long appeals. The order, duly docketed, is an appealable judgment under *Houghton v. County Commissioners of Kent County,* 305 Md. 407, 504 A.2d 1145 (1986).

**3.** There are only 15 appellees. One defendant, who was never served, was dismissed.

Certificate for Mentally Disordered" and by then handcuff-
ing Long and transporting him to an "Asylum."

That "Asylum" was Taylor Manor Hospital, where Long
arrived on November 18. Long contends that there,
through the actions of doctors and other agents of Taylor
Manor, he was illegally involuntarily admitted, without his
consent kept at Taylor Manor, subjected to unlawful medi-
cal procedures and other wrongful actions, and not released
until November 25.

Long in due course sued both the Franklin Square and
Taylor Manor health providers for false imprisonment and
intentional infliction of emotional distress (Counts I–
XXXII). He added 42 U.S.C. § 1983 claims for violation of
his constitutional rights (Counts XXXIII–XLVIII). Each
count claimed $500,000 compensatory and $500,000 punitive
damages.

There ensued a veritable blizzard of motions to dismiss,
answers to motions, and memoranda. When the air cleared,
the outcome was as we have stated it. Long's complaint
was dismissed because he had not first proceeded through
the health claims arbitration process.[4]

The legal framework within which Long must operate is
clear. One who sustains a "medical injury" at the hands of
"health care providers" and whose claimed damages exceed
$5,000 [5] may not seek redress in a trial court until he or she
has completed the arbitration process provided by the
Health Care Malpractice Claims Act (the Act). *See Oxtoby
v. McGowan*, 294 Md. 83, 87, 447 A.2d 860 (1982). The
appellees are health care providers as defined in § 3–2A–

o

---

**4.** When Long filed his complaint in circuit court, it seems he concur-
rently filed a claim with the Health Claims Arbitration Office, but that
was held in abeyance pending resolution of the court action.

**5.** The $5,000 "threshold" was in effect when this case was decided in
the trial court and when it was argued here. The "threshold" was
substantially raised by Ch. 640, Acts of 1986, effective July 1, 1986.
That change has no bearing on this case, since Long's claims far
exceed even the new "threshold."

01(e).[6] Long's claims against each appellee exceed $5,000. The only issue is whether the wrongs he allegedly suffered are "medical injur[ies]."

Section 3–2A–01(f) defines a "medical injury" as "an injury arising or resulting from the rendering or failure to render health care." In deciding whether the wrongs asserted by Long fall within the ambit of that subsection, we shall first consider the common law torts he has alleged, and then his 42 U.S.C. § 1983 claims.

As we have seen, the common law tort claims are false imprisonment and intentional infliction of emotional distress. It is Long's position that intentional torts simply are not "medical injuries." That term, he suggests, may be applied only to harm caused by negligent acts or failures to act. In support of this conclusion, he relies on two Maryland decisions: *Cannon v. McKen*, 296 Md. 27, 459 A.2d 196 (1983) and *Nichols v. Wilson*, 296 Md. 154, 460 A.2d 57 (1983).

In *Cannon* a dentist's patient was injured when an x-ray wall attachment fell on her. The question was whether this was a medical injury. The Court of Appeals concluded that § 3–2A–01(f) was "somewhat ambiguous" in its definition of that term and looked to the legislative intent underlying the Act. 296 Md. at 32, 459 A.2d 196. Reasoning that "[it] is patent that the legislature intended only those claims which the courts have traditionally viewed as professional malpractice to be covered by the Act", *id.* at 34, 459 A.2d 196, the Court held

---

**6.** In his brief, Long suggests that three of the appellees, Edith Taylor, Donald Dalton, and Sol Fischer, are not health care providers. The asserted basis for the liability of these appellees was, however, *respondeat superior;* they were alleged to be partners who operated one or more of the appellee health-care institutions. The Act prohibits pre-arbitration suits against a non-health care provider when the claim is based "on the medical malpractice of its employee health care provider...." *Group Health Ass'n., Inc. v. Blumenthal,* 295 Md. 104, 114, 453 A.2d 1198 (1983).

... that the Act covers only those claims for damages arising from the rendering or failure to render health care where there has been a breach by the defendant, in his professional capacity, of his duty to exercise his professional expertise or skill. Those claims for damages arising from a professional's failure to exercise due care in non-professional situations, such as premises liability, slander, assault, etc., were not intended to be covered under the Act and should proceed in the usual tort claim manner. *Id.* at 36, 459 A.2d 196.

*Cannon* had come up on the pleadings. Because the Court could not determine from the pleadings whether the injuries had occurred as a result of actions in the dentist's "non-professional capacity" the case was remanded to permit appropriate amendments to clarify the point.

*Cannon*, therefore, teaches that at least some actions against health care providers are not arbitrable under the Act. The Court carried its analysis of this problem a step further in *Nichols v. Wilson*, 296 Md. 154, 460 A.2d 57 (1983).

*Nichols* was a case in which a doctor, about to remove sutures from a child's cheek, slapped the child. He was sued in circuit court for, *inter alia,* assault and battery and intentional infliction of emotional distress. The doctor's motion to dismiss was granted, the circuit court holding that the Act applied and that arbitration was required as a condition precedent to suit. The Court of Appeals reversed. Judge Couch, writing for the Court, as he had in *Cannon*, reasoned:

Count I of appellants' declaration clearly sounds in traditional assault and battery terms and alleges an *intentional, malicious, wanton* and *reckless* act. In no way can it be said that the legislature intended such a claim to be within the Act even though such action took place during the rendering of health care.

Likewise, Count III [intentional infliction of emotional distress] depends for its validity on the actions described

in the assault and battery count which, again, are described as intentional, reckless, extreme and outrageous. 296 Md. at 161, 460 A.2d 57 [emphasis in original].

Long sees *Nichols* as dispositive of this case. *See also* MacAlister and Scanlan, *Health Claims Arbitration in Maryland: The Experiment Has Failed,* 14 U. of Balt.L. Rev. 481, 491–92 (1985). He, like the appellants in *Nichols,* has charged the appellee health care providers with the commission of intentional torts. His reading of *Nichols* leads him to the conclusion that intentional torts can never produce "medical injuries" within the § 3–2A–01(f) definition.

What Long overlooks is footnote 5, appended to the second paragraph of the portion of *Nichols* we have just quoted. That footnote demonstrates that Long's reading of the case is too broad. The footnote explains:

> We do not mean hereby to indicate that all intentional torts of a professional nature are not covered by the Act as there may well be many such acts that would be so covered. *Id.,* footnote 5.

Our task, then, is to determine whether the torts alleged here are among those intentional torts that are covered by the Act. That determination does not depend on how Long has labelled the torts—false imprisonment and intentional infliction of emotional distress—but on the factual context in which the torts were allegedly committed.

> ... [T]he critical question is whether the claim is based on the rendering or failure to render health care and not on the label placed on the claim.... If health care is or should be rendered and damage results therefrom, then it is a claim under the Act and must first be arbitrated.

*Brown v. Rabbitt,* 300 Md. 171, 175, 476 A.2d 1167 (1984) [citation omitted]. To answer this "critical question," we must turn to the allegations of Long's complaint.

The complaint shows that Long was brought to Franklin Square Hospital because he was thought to be a suicide risk. He was kept there involuntarily because the health

care providers at that hospital were attempting to treat him for that problem. His claimed false imprisonment, from which the asserted emotional distress arose, was caused by those health providers who executed Physicians' Certificates for mentally disordered that are required for involuntary admission to mental health facilities. Long argues that the issuance of the certificates did not comply with the procedure required by COMAR 10.21.01.03.

Those improperly executed certificates, according to the complaint, caused Long's transportation to and false imprisonment at Taylor Manor. The health care providers at that facility falsely imprisoned Long there, because they relied on the obviously improper and incomplete Physicians' Certificates and kept him there, without any medical reason for doing so, in violation of COMAR 10.21.01.04E (providing for prompt review of the status of an involuntary mental committee). In addition, the complaint charges that the Taylor Manor personnel failed to comply with other COMAR provisions dealing with the rights of involuntary committees.

The COMAR provisions allegedly violated by appellees implement §§ 10–613 through 10–617 of the Health-General Article. These sections are part of Maryland's Mental Hygiene Law, which declares the State's policy to be:

(1) to the best of its ability, to foster and preserve the mental health of its citizens; and

(2) to that end, to provide without partiality care and treatment to citizens who have mental disorders.

Health-General Art., § 10–102.

It is apparent to us that what Long's complaint in fact alleges is misdiagnosis of his condition and the subsequent rendition of unnecessary and, therefore, improper care. The appellees' alleged failure to comply with various COMAR provisions dealing with the treatment of involuntary mental committees is in effect a charge of malpractice—the failure to adhere to a standard of care required (by COMAR) of certain health care providers.

The case before us is unlike *Nichols*. In that case the cause of action (the slap) did not arise from a negligent,

reckless, or unnecessary suture removal. Rather, the slap was a gratuitous act that obviously was not part of the medical treatment. Here, the cause of action is based on the treatment itself and other actions that are said to be in violation of mandated health care standards. Nor is Long aided by his Florida authorities. *St. Vincent's Medical Center v. Oakley,* 371 So.2d 590 (Fla.App.1979) is distinguishable because it involved forcible detention of a patient who had *voluntarily* committed himself for a psychiatric evaluation. The fact that Long was *involuntarily* committed is central to the question of whether appellees' actions were within the scope of the rendition of health care. And in *Jackson v. Biscayne Medical Center,* 347 So.2d 721 (Fla.App.1977), the charges of false arrest, malicious prosecution, assault and battery, and breach of contract had no direct connection with the provision of health care. They were based on Jackson's arrest for trespassing at a hospital where he had once been a patient.

More helpful to the decision in this case is Judge Couch's opinion in *Brown v. Rabbitt, supra.* In that case, Ms. Brown sued Dr. Rabbitt for breach of express and implied warranties. The express warranty was alleged to be a representation that a tubal ligation was a safe procedure and would not result in unusually heavy and irregular menstrual cycles. The implied warranties were that Dr. Rabbitt had undertaken to provide "medical, surgical, hospital, nursing, and post-operative care to [Ms. Brown] in accordance with reasonable standards for such treatment in Maryland." 300 Md. at 173–74, 476 A.2d 1167. Ms. Brown claimed that Dr. Rabbitt had breached those warranties. She argued that her action was in contract and, therefore, not subject to mandatory arbitration under the Act. The Court of Appeals disagreed.

As we have seen (p. 575, *supra*), the Court rejected the notion that the labelling of a claim is determinative of coverage by the Act. It pointed out that:

Only a physician in his professional capacity could make a representation such as was alleged here. The representa-

tions were directly related to medical treatment and the degree of success of such treatment. They arose from a doctor/patient relationship and as such [Ms. Brown's] claim is covered by the Act. 300 Md. at 176, 476 A.2d 1167.

In the case before us, Long's claims arise from a doctor-patient relationship, albeit an involuntary one. They stem from the rendering of health care in alleged contravention of standards applicable to that care. They implicate directly the professional competence of the several appellees. We hold that Long's common law claims involve medical injuries as defined in § 3–2A–01(f), and thus are subject to arbitration as a condition precedent to judicial relief.

What we have said about Long's common law tort claims to a considerable extent applies to his 42 U.S.C. § 1983 claims, which are based on the same purported wrongdoings. A § 1983 claim is a species of tort claim. *Memphis Community School District v. Stachura,* — U.S. —, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Thus, if the torts charged in the § 1983 claim involve, as we have held, medical injuries, they, too, would appear to be governed by the arbitration requirements of the Act.[7]

Long argues, however, that the trial court had no authority to dismiss his § 1983 claim and send it to arbitration because a § 1983 claimant is not required to exhaust administrative remedies prior to instituting a § 1983 action in a Maryland court. We so held (although not in a medical malpractice case) in *Maryland-National Capital Park and Planning Commission v. Crawford,* 59 Md.App. 276, 291, 475 A.2d 494 (1984), relying, *inter alia,* on *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). When the Court of Appeals affirmed our *Crawford,*

7. This is an issue the Court of Appeals has not yet had occasion to address. *See Widgeon v. Eastern Shore Hospital Center,* 300 Md. 520, 527 n. 16, 479 A.2d 921 (1984).

it found it unnecessary to reach the question of whether *Patsy's* non-exhaustion doctrine applies to a § 1983 claim brought in a state court. *Maryland-National Capital Park and Planning Commission v. Crawford,* 307 Md. 1, 14, 511 A.2d 1079, 1086 (1986).

The flaw in Long's argument is that it does not take into account the complete procedural posture of this case. We must not lose sight of the fact that this case involves not one, but two proceedings.

Long elected to file a claim (now held in abeyance) with the Health Claims Arbitration Office along with his action in circuit court. *See* n. 4, *supra.* In this situation, resolution of the judicial action, no matter what its nature, must wait until the arbitration process has run its course. The Court of Appeals said as much in its *Crawford.* In that case, one of the issues facing the Court was whether Crawford was obligated to exhaust her remedies with the Maryland Commission on Human Relations before bringing a § 1983 discrimination action in state court. Relying on the doctrine of primary jurisdiction and on the legislative intent underlying the employment discrimination provisions of Art. 49B, the Court held that "where an employee has a specific statutory cause of action [under § 1983] for a claim of employment discrimination, independent of Art. 49B, Maryland law does not require that the employee, as a condition for maintaining the independent judicial action, first invoke the procedures before the Human Relations Commission." *Crawford,* 307 Md. at 30–31, 511 A.2d 1079. But the Court went on to offer guidance for the treatment of cases similar to Long's:

> ... [W]here a plaintiff having an independent judicial remedy also elects to file a claim with the Commission on Human Relations, a court should require that the plaintiff exhaust his Commission remedies before the court addresses the merits of the independent action.

*Crawford,* 307 Md. at 31, n. 14, 511 A.2d 1079.

It is true, of course, that the Health Care Claims Arbitration Act's arbitration requirement does not involve,

strictly speaking, the exhaustion of administrative remedies. An arbitration panel is not an administrative agency. *Oxtoby*, 294 Md. at 91, 447 A.2d 860.[8] Neither does the Act deprive a circuit court of jurisdiction; it creates a condition precedent to the exercise of that jurisdiction. *Oxtoby*, 294 Md. at 91, 447 A.2d 860. Thus, we could take the position, as appellees do, that cases concerning the interplay between the doctrine of exhaustion of administrative remedies and § 1983 are of no moment here. On the other hand, the arbitration requirement of the Act is "analogous to the doctrine of exhaustion of administrative remedies." *Id.* By virtue of that analogy, and by the guidance supplied in *Crawford*, we hold that because Long elected to file a claim with the Health Claims Arbitration Office concurrently with pursuing his § 1983 claims in trial court, the court correctly declined to address those claims before the arbitration remedy had run its course.

We add that our holding is consonant with the legislative intent of the Act. By shaping, where possible, medical claims as § 1983 actions, the legislatively-mandated arbitration process could be by-passed. In a case such as this one, that would mean two separate and duplicative treatments of the same factual issues—arbitration followed by judicial processes for the common law claims; independent judicial treatment for the § 1983 claims based on the same facts. We believe that this squandering of adjudicative resources is required neither by our *Crawford* nor by the decisions on which it relies.

We further observe that the policy we follow today does not, contrary to Long's protestations, discriminate against Long's § 1983 rights, because those rights are treated precisely as his common law rights. Also, the congressional policy of encouraging state courts to hear federal claims

---

**8.** *But compare Attorney General v. Johnson,* 282 Md. 274, 286 n. 11, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), which declined to consider the extent to which the Health Claims Arbitration Office and its activities are subject to administrative law principles.

is not frustrated because Long may still present his federal claims in a state court after the conclusion of arbitration.

The trial court's dismissal of Long's § 1983 claims along with his common law claims was not error.[9]

JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.

---

9. Because of this holding, we need not and do not address appellees' suggestion that Long's § 1983 counts failed to state claims under that section.