870 A.2d 592

**Stephanie Daley AFAMEFUNE, a Minor, by Her Mother and Next Friend, Sophia AFAMEFUNE, and Sophia Afamefune, Individually**

v.

**SUBURBAN HOSPITAL, INC.**

**No. 120, Sept. Term, 2002.**

Court of Appeals of Maryland.

March 17, 2005.

678

Henry E. Weil (Belli, Weil & Grozbean, P.C., on brief), Rockville, for appellant.

S. Allan Adelman (Michael I. Joseph, Adelman, Sheff & Smith, LLC, on brief), Rockville, for appellee.

Argued before BELL, C.J., ELDRIDGE.,[*] RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, C.J.

We granted certiorari in this case to decide whether the Maryland Health Care Malpractice Claims Act, Maryland Code (1974, 2002 Repl.Vol.) §§ 3–2A–01 through 3–2A–09 of the Courts and Judicial Proceedings Article ("the Act")[1] ap-

---

[*] Eldridge, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Aside from the definition of "medical injury," set out in Maryland Code (1974, 2002 Repl.Vol.) § 3–2A–01 (f) of the Courts and Judicial Proceedings Article, the pertinent provisions of the Act for our purposes are §§ 3–2A–02, 3–2A–03 and 3–2A–04. The former addresses the procedure for instituting a claim and provides, in that regard:

"(a)(1) All claims, suits, and actions, including cross claims, third—party claims, and actions under Subtitle 9 of this title, by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought to and shall be governed by the provisions of this subtitle.

"(2) An action or suit type that may not be brought or pursued in any court of this State except in accordance with this subtitle.

"(3) Except for the procedures stated in § 3–2A–06(f) of this subtitle, an action within the concurrent jurisdiction of the District Court is not subject to the provisions of this subtitle.

"(b) A claim filed under this subtitle and an initial pleading filed in any subsequent action may not contain a statement of the amount of damages sought other than that they are more than a required jurisdictional amount.

"(c) In any action for damages filed under this subtitle, the health care provider is not liable for the payment of damages unless it is established that the care given by the health care provider is not in

plies when a hospital patient, alleging that she was assaulted and raped by another patient, sues the hospital for negligence in failing to provide for her security while hospitalized. If it does, then the claim must be filed with the Health Claims Arbitration Office; if it does not, the claim is appropriately filed in the Circuit Court.

Appellant Sophia Afamefune, individually, and as next friend and mother of Stephanie Afamefune, the other appellant, Stephanie, (collectively "the appellants"), filed, in the Circuit Court for Montgomery County, a complaint sounding in negligence against Suburban Hospital, Inc., the appellee. Pointing out that claims for medical injury, as a condition precedent to filing an action in court, must be submitted to non-binding arbitration by being filed with the Health Claims Arbitration Office and arguing that the appellant's claims were for medical injury, the appellee moved to dismiss the appellants' complaint. Agreeing with the appellee, the trial court granted its motion. For reasons hereinafter to be set forth, we shall reverse the judgment of the Circuit Court.

## I.

Stephanie, a fourteen year old minor, was, on September 26, 2001, admitted as a patient at Suburban Hospital for injuries sustained when she jumped from a moving automobile.[2] On October 2, 2001, while a patient on the psychiatric ward, being treated for depression, she was assaulted and

---

accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

"(d) Except as otherwise provided, the Maryland Rules shall apply to all practice and procedure issues arising under this subtitle."

Section 3–2A–03 creates an Health Claims Arbitration Office, headed by a Director. Section 3–2A–04 then provides that "[a] person having a claim against a health care provider for damage due to a medical injury shall file his claim with the Director," subsection (a)(1), and, prescribes procedures for doing so. Thus, a claim against a health care provider for "medical injury," where the amount of damages sought exceeds the "limit of the concurrent jurisdiction of the District Court" is governed by the Health Care Malpractice Claims Act.

2. Because we review the grant of a motion to dismiss, the well pleaded facts are taken as true. *Warner v. Lerner*, 348 Md. 733, 735, 705 A.2d

raped or attempted to be raped by a male patient. The appellants filed a complaint in the Circuit Court for Montgomery County against the appellee. In the complaint, they alleged that the appellee breached the duties it owed Stephanie "to exercise reasonable care for her protection and ... to protect her from being assaulted and raped," resulting in "severe physical and emotional pain and suffering which may be permanent" and which has required and will continue to require medical attention, with the necessary financial expenditures and anticipated financial losses.[3] The appellee filed a motion to dismiss and argued in support of the motion the appellants' failure to file their claims pursuant to the Maryland Health Care Malpractice Claims Act, with the Health Claims Arbitration Office.[4] The Circuit Court granted the

1169, 1170 (1998); *Boyds Civic Ass'n v. Montgomery County Council*, 309 Md. 683, 686 n. 2, 526 A.2d 598 (1987); *Berman v. Karvounis*, 308 Md. 259, 264, 518 A.2d 726, 728 (1987); *Flaherty v. Weinberg*, 303 Md. 116, 135–36, 492 A.2d 618, 628 (1985).

3. Before the Court is the appellants' amended complaint. The initial complaint was met with the appellee's motion to dismiss, the basis for which, it alleged, was the appellants' failure to file their claims with the Health Claims Arbitration Office, as the Health Care Malpractice Claims Act requires. The Circuit Court granted the motion and dismissed the complaint, without prejudice, allowing the appellants fifteen days to file an amended complaint, which they did.

4. Replying to the appellants' "Opposition to Motion to Dismiss," the appellee offered an alternate theory for dismissal. Citing Maryland Code (1974, 2002 Repl.Vol.) § 5–609 of the Courts and Judicial Proceedings Article, it submitted that the appellants' complaint did not state a claim upon which relief could be granted. *See* Md. Rule 2–322(b). Section 5–609 provides:

"(a) *Definitions.*—(1) In this section the following words have the meanings indicated.
"(2) 'Mental Health provider' means:
"(i) A mental health care provider licensed under the Health Occupations Article; and
"(ii) Any facility, corporation, partnership, association, or other entity that provides treatment or services to individuals who have mental disorders.
"(3) 'Administrator' means an administrator of a facility as defined in § 10–101 of the Health—General Article.

.

"(b) *In general.*—A cause of action or disciplinary action may not arise against any mental health care provider or administrator for failing to predict, warn of, or take precautions to provide protection from a patient's violent behavior unless the mental health care provider or administrator knew of the patient's propensity for violence and the patient indicated to the mental health care provider or administrator, by speech, conduct, or writing, of the patient's intention to inflict imminent physical injury upon a specified victim or group of victims.

"(c) *Duties.*—(1) The duty to take the actions under paragraph (2) of this subsection arises only under the limited circumstances described under subsection (b) of this section.

"(2) The duty described under this section is deemed to have been discharged if the mental health care provider or administrator makes reasonable and timely efforts to:

"(i) Seek civil commitment of the patient:

"(ii) Formulate a diagnostic impression and establish and undertake a documented treatment plan calculated to eliminate the possibility that the patient will carry out the treat; or

"(iii) Inform the appropriate law enforcement agency and, if feasible, the specified victim or victims of:

"1. The nature of the threat;

"2. The identity of the patient making the threat; and

"3. The identity of the specified victim or victims.

"(d) *Patient Confidentiality.*—No cause of action or disciplinary action may arise under any patient confidentiality act against a mental health care provider or administrator for confidences disclosed or not disclosed in good faith to third parties in an effort to discharge a duty arising under this section according to the provisions of subsection (c) of this section."

A motion to dismiss for failure to state a claim tests the sufficiency of the pleadings. Md. Rule 2–322(b)(2); *see Converge Services Group, LLC v. Curran,* 383 Md. 462, 475, 860 A.2d 871, 878–79 (2004) ("consideration of the universe of 'facts' pertinent to the court's analysis of the motion are limited generally to the four corners of the complaint and its incorporated supporting exhibits, if any"); Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary,* 206 (3d ed.2003) ("[t]he object of the motion is to argue that as a matter of law relief cannot be granted on the facts alleged"); *Sharrow v. State Farm Mut. Ins. Co.,* 306 Md. 754, 768, 511 A.2d 492, 500 (1986)(noting that any "ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader"). *See also Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327, 331 (1993). Thus, in deciding such a motion, the Court assumes the truth of the well-pleaded facts and allegations in the complaint, as well as the inferences reasonably drawn from them. *Porterfield v. Mascari II, Inc.,* 374 Md. 402, 414, 823 A.2d 590, 597 (2003) (indicating that the we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party); *Bennett Heating & Air Conditioning, Inc.,* 342 Md. 169, 674 A.2d 534 (1996) ("the facts to be [considered are] those that are well pleaded by the plaintiffs, including those facts that may fairly be inferred from the

appellee's motion and dismissed the appellants' complaint, with prejudice and without leave to amend. Noting that "the Health Claims Arbitration Act was designed to cover health care providers, and that generally has been given a rather broad perspective," the Court reasoned:

"It cannot be ignored that Suburban is a medical facility, and would come under the general umbrella of health care providers.

"That statute is designed for the purpose of bringing these matters to a preliminary matter of resolution before it comes to court, and I am satisfied that the language mandates that this—even though it is a hospital and the theory of recovery is negligence as opposed to medical malpractice, which is medical negligence—I feel that the defendant's argument is the stronger of the two. That it should be dismissed for failure to have been pursued in the proper fashion of the Health Claims Arbitration Act."

The Appellants noted an appeal to the Court of Special Appeals. Prior to any proceedings in the intermediate appellate court, on our own motion, we issued the writ of certiorari, *see* 372 Md. 684, 814 A.2d 570 (2003), to consider this important issue of public interest.

matters expressly alleged"); *Board of Education v. Browning*, 333 Md. 281, 286, 635 A.2d 373, 376 (1994)(in evaluating a motion to dismiss the court "must accept as true all well-pleaded facts and allegations in the complaint"); *A.J. Decoster Co. v. Westinghouse Electric Corp.*, 333 Md. 245, 249, 634 A.2d 1330, 1332 (1994) ("the truth of all well-pleaded relevant and material facts as well as all inferences that reasonably can be drawn therefrom" must be assumed). Only when, so viewed, the facts and allegations would be insufficient to establish a cause of action, is dismissal for failure to state a claim proper. *Board of Education v. Browning*, 333 Md. at 286, 635 A.2d at 376 ("[d]ismissal is only proper if the facts and allegations viewed in the light most favorable to the plaintiff fail to afford the plaintiff relief if proven.").

## II.

■ It is well settled that, "[a]bsent a waiver by the parties, the Health Care Malpractice Claims Act requires the submission of malpractice claims against health care providers to an arbitration proceeding as a condition precedent before maintaining a tort action in the circuit court." *Goicochea v. Langworthy*, 345 Md. 719, 725, 694 A.2d 474, 477 (1997). *See Goodwich v. Nolan*, 343 Md. 130, 151, 680 A.2d 1040, 1050 (1996); *Jewell v. Malamet*, 322 Md. 262, 265, 587 A.2d 474, 475–476 (1991); *Tranen v. Aziz*, 304 Md. 605, 612, 500 A.2d 636, 639 (1985); *Bailey v. Woel*, 302 Md. 38, 41, 485 A.2d 265, 266 (1984); *Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860, 864–865 (1982); *Attorney General v. Johnson*, 282 Md. 274, 283–284, 385 A.2d 57, 63, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). *See also Newell v. Richards*, 323 Md. 717, 727–734, 594 A.2d 1152, 1157–1161 (1991). The claims against health care providers to which the Act pertains are only those in which medical injuries are alleged. *See* § 3–2A–01(f),[5] defining "medical injury" to "mean[ ] injury arising or resulting from the rendering or failure to render health care." This Court has considered, and explained, this definition of "medical injury"[6] and concluded:

---

■

We conclude that there is no merit to the appellee's alternative argument; therefore, its motion to dismiss for failure of the complaint to state a claim is denied.

5. As a result of an amendment during the 2004 special legislative session, *see* Acts 2004, 1st Sp. Sess., ch.5, § —— 1, effective January 11, 2005, the definition of "medical injury" is now codified at § 3–2A–01 (g).

6. We considered the definition of "medical injury" to be "somewhat ambiguous." *Cannon v. McKen*, 296 Md. 27, 32, 459 A.2d 196, 199 (1983). Therefore, we sought to discern the legislative intent from material extraneous to the Act. After reviewing our decision in *Attorney General v. Johnson*, 282 Md. 274, 280–81, 385 A.2d 57, 61, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), we concluded:

"Thus, it seems patent the legislature, by enacting the pertinent legislation, was reacting to a medical malpractice insurance 'crisis' which was recognized as only partially resolved by creation of the Medical Mutual Liability Insurance Society of Maryland. It therefore is clear to us that the legislature intended to include in the scope of the Act only those claims for damages done to or suffered by a person

"[T]he legislature did not intend that claims for damages against a health care provider, arising from non-professional circumstances where there was no violation of the provider's professional duty to exercise care, to be covered by the Act. It is patent that the legislature intended only those claims which the courts have traditionally viewed as professional malpractice to be covered by the Act."

*Cannon v. McKen, supra,* 296 Md. at 34, 459 A.2d at 200. *See Nichols v. Wilson,* 296 Md. at 161, 460 A.2d at 61 ("it is only those claims for damages where there has been a violation of the health care provider's professional duty to exercise care which are within the Act"); *Brown v. Rabbitt,* 300 Md. 171, 175, 476 A.2d 1167, 1169 (1984).

Our consideration and explanation were in the context of the rendering of medical services or treatment. In *Goicochea v. Langworthy, supra,* and *Nichols v. Wilson, supra,* there were allegations that, while providing the medical treatment sought, the health care provider committed intentional torts on the patient. In *Goicochea v. Langworthy, supra,* the allegation that the doctor, during a hernia examination, "intentionally assaulted and battered [the plaintiff's] left inguinal area with the full force of his left forefinger for approximately five minutes," 345 Md. at 723, 694 A.2d at 476, was found "insufficient to remove [the plaintiff's] claim from the coverage of the Health Care Malpractice Claims Act." *Id.* at 729, 694 A.2d at 479. The allegation in *Nichols v. Wilson, supra,* that, while on the operating table, prepared for the removal of sutures, the defendant doctor "without provocation ... intentionally, violently, maliciously, wantonly and recklessly struck with his hand the left cheek of [the plaintiff]," causing permanent injury, pain and mental anguish, 296 Md. at 155, 460 A.2d at 58, which "clearly sounds in traditional assault and battery terms and alleges an *intentional, malicious, wanton and reckless* act," *id.* at 161, 460 A.2d at 61, was held by this Court

originating from, in pertinent part, the giving of or failure to give health care."
*Cannon v. McKen, supra,* 296 Md. at 34, 459 A.2d at 200.

not to be within the Act, "even though such action took place during the rendering of health care." *Id.* We were careful to point out that not all intentional torts were automatically excluded, opining, instead, that "there may well be many [intentional torts] that would be so covered." *Id.* at 161 n. 5, 460 A.2d at 61 n. 5.

The complaint in *Brown v. Rabbitt, supra,* alleged a breach of express and implied warranties made to the plaintiff and on which the plaintiff relied, in connection with a tubal ligation procedure. Concluding that such an action was covered by the Act—"[t]his is clearly a claim involving the appellee's professional expertise and thus is subject to mandatory arbitration, notwithstanding the fact that the action is brought for breach of warranty," 300 Md. at 176, 476 A.2d at 1170–, the Court stated the critical question as being "whether the claim is based on the rendering or failure to render health care and not on the label placed on the claim." *Id.* at 175, 476 A.2d at 1169.

The complaint in *Cannon v. McKen, supra,* sounded in negligence, strict liability in tort and breach of warranty. 296 Md. at 28–29, 459 A.2d at 197. The causes of action arose out of the injury to the plaintiff, a dental patient, incurred when, while "sitting in [the defendant dentist's] dental chair, a part of the chair and/or x-ray wall attachment broke loose and fell on her, striking her on the face and head." *Id.* at 29, 459 A.2d at 198. Although conceding that "[a] much closer situation may develop where the injury occurs during treatment when equipment, being used in that treatment, malfunctions and causes the injury," *id.* at 36, 459 A.2d at 201, the Court held:

"[T]he Act covers only those claims for damages arising from the rendering or failure to render health care where there has been a breach by the defendant, in his professional capacity, of his duty to exercise his professional expertise or skill. Those claims for damages arising from a professional's failure to exercise due care in non-professional situations such as premises liability, slander, assault, etc.,

were not intended to be covered under the Act and should proceed in the usual tort claim manner."

*Id.* at 36–37, 459 A.2d at 201.

We made clear, however, that the burden is on the pleader to:

"allege sufficient facts to make clear the theory upon which the alleged liability is based. It is a basic rule of law that where a cause of action is dependent upon a condition precedent, plaintiff must allege performance of such condition or show legal justification for nonperformance. If the [complaint] fails to contain such allegations, defendant can object by [motion to dismiss] or plea."

*Id.* at 38, 459 A.2d at 202. Noting that the complaint alleged the plaintiff's status as a dental patient using the dental chair and/or x-ray equipment wall attachment at the time that she was injured, the Court found the pleadings "too sparse to allow a determination whether [the plaintiff]'s injury arose because of the defendant's breach of his professional duty owed her or because of a breach of duty which he may have owed her as a premises owner or in some other non-professional capacity." *Id.* at 37–38, 459 A.2d at 202.

*Jewell v. Malamet* also addressed the pleading requirement, in the process clarifying the holding in *Nichols v. Wilson* with respect to when intentional torts alleged to have been committed by health care providers during the rendering of medical care are covered by the Act. In that case, the plaintiff alleged that a physician had "intentionally, wrongfully, willfully, maliciously and violently" assaulted, battered and sexually abused her by fondling her vaginal and breast areas during two musculoskeletal examinations. 322 Md. at 267–269, 587 A.2d at 477. Noting that " 'the factual context in which the tort was allegedly committed,' " *id.* at 272, 587 A.2d at 479, is critical, after analyzing our cases and the allegations in the complaint before it, the Court concluded:

"Unlike *Nichols*, the claims here as alleged do not support a view that 'in no way can it be read that the Legislature intended them to be within the Act.' In the face of the

allegations, we cannot say, as a matter of law, that the claims as set out were not for medical injury allegedly suffered by Jewell."

*Id.* at 274, 587 A.2d at 480. In explanation, we detailed the Court's attempt at oral argument to obtain a concession from the physician's counsel "that the conduct complained of had no conceivable validity as part of the examination being conducted." *Id.* at 275, 587 A.2d at 481. It was in the absence of such a concession, "that we [were] unable to conclude, as a matter of law, that the allegations as voiced are not subject to the Act." *Id.*

The *Jewell v. Malamet* holding and analysis were extensively discussed and explicated in *Goicochea v. Langworthy, supra.* Addressing the pleading requirement, the Court explained:

"Consequently, under *Jewell,* the determination of the proper initial forum for cases involving allegations of intentional torts committed by health care providers depends upon the factual context in which the tort was allegedly committed. Where a plaintiff alleges that he or she was injured by a health care provider during the rendering of medical treatment or services, the Act is implicated, regardless of whether the claim sounds in negligence or intentional tort. When confronted with such a claim, the trial court must determine if the plaintiff's factual allegations remove the claim from the Act's coverage. If the complaint sets forth facts showing that the claimed injury was not inflicted during the rendering of medical services, or that the injury resulted from conduct completely lacking in medical validity in relation to the medical care rendered, the Act is inapplicable, and the action may proceed without first resorting to arbitration.

"Under our holding in *Jewell,* however, if the trial court is unable to conclude that the allegations remove the claim from the Act's coverage, the court should not exercise jurisdiction over the claim until a malpractice claim is filed with the HCAO. The HCAO initially will determine if the

claim alleges a 'medical injury' and is therefore subject to the Act."

345 Md. at 728–29, 694 A.2d at 479.

In the instant case, we observe that it is alleged that Stephanie was assaulted and raped, or attempted to be raped, in her hospital room while a psychiatric patient on the appellee's premises, but, at the time of the assault, no active or direct health care was being rendered by any health care provider. Moreover, it is not alleged that a health care provider committed the assault. To the contrary, the allegation is that it was committed by another-a male—of the appellee's psychiatric patients. Nor is there an allegation, and it is inconceivable that there could be one, that the assault was itself a part of the course of treatment that Stephanie was receiving for depression.[7]

The appellee argues that the Circuit Court correctly ruled that the appellants' claim against it was covered by the Act and, therefore, that their complaint, because it was not filed initially in the Health Claims Arbitration Office, was properly dismissed. Specifically, it says, the appellants did not meet their obligation to show in their complaint that the Act does not apply. The appellee concedes that the complaint sufficiently alleged the hospital-patient relationship, also that the assault was committed by another patient and that the appellee owed Stephanie a duty to protect her from such assaults; however, it maintains that "[w]hat is missing ... are factual allegations that would take the Appellant's claims against her health care provider that arose during the course of a hospital-patient relationship outside the scope of the Act." [8] It proffers, in that regard:

---

7. It is not clear whether Stephanie was receiving medication. Nevertheless, it is conceivable that retention in the hospital, whether for rest or for observation or some other purpose related to the patient's condition, could be considered treatment.

8. In addition to the failure to plead facts that would exclude the claim from the coverage of the Act, the appellee submits that the appellants failed to plead essential elements of a premises liability cause of action,

"In order to determine if Suburban was negligent in '[p]er-mit[ting] an adult male patient to walk into [Appellant's] room which was in close proximity to the nurse's station,' or '[f]ail[ing] to provide adequate security for [Apellant's] well-being,' a jury would have to address various issues involving the professional competence and judgment of agents and employees of Suburban. There is no way a jury can determine whether Suburban failed to meet the common law tort standard of acting as a reasonably prudent person under the circumstances without addressing the following issues:

● Was it reasonable to place a minor female psychiatric patient such as the Appellant on Suburban's psychiatric unit?

● Assuming the assaulting patient was also a patient on the psychiatric unit, was it reasonable to place that individual on Suburban's psychiatric unit?

● Did the patient who allegedly committed the assault say or do anything that would have or should have indicated to Suburban's staff that he posed a threat to the Appellant or anyone else?

● Was the adult patient who allegedly assaulted the Appellant appropriately evaluated, diagnosed and treated?

---

namely, notice and the existence of a "dangerous condition." The appellee relies on *Lloyd v. Bowles*, 260 Md. 568, 572–73, 273 A.2d 193, 196 (1971), in which this Court set out the requirements for finding premises liability on the part of the storeowner:

"the jury must find, (1) that the storeowner had actual or constructive notice of a condition which created an unreasonable risk of harm to the invitee, (2) that the storeowner should have anticipated that the invitee would not discover the condition or realize the danger, or would fail to protect herself from the danger, and (3) that the storeowner failed to take reasonable means to make the premises safe or to give adequate warning of the condition to the invitee."

(Citing *Gast, Inc. v. Kitchner*, 247 Md. 677, 685, 234 A.2d 127 (1967); Restatement (Second) of Torts s 343 (1965)). As is evident from the foregoing quote, *Lloyd v. Bowles, supra*, was not a pleading case; rather, it addressed the sufficiency of the evidence, an issue presented in that case via a ruling on a motion for judgment notwithstanding the verdict. The argument and *Lloyd v. Bowles* are inapposite.

● Was the Appellant appropriately evaluated, diagnosed and treated?

● Was the condition and diagnosis of the adult patient who allegedly assaulted the Appellant such that Suburban's staff, in the exercise of their professional judgment, should have taken certain steps to ensure that he not come into contact with the Appellant?

● Considering the conditions of the patients involved, was there appropriate supervision and surveillance provided by Suburban's staff?"

*Appellee's brief* at pages 13–14.

In addition to those of our cases as we have reviewed, the appellee relies on *Long v. Rothbaum*, 68 Md.App. 569, 514 A.2d 1223 (1986) and *Roberts v. Suburban Hospital*, 73 Md. App. 1, 532 A.2d 1081 (1987).

*Long v. Rothbaum* was an action against health care providers, Franklin Square Hospital and Taylor Manor, for false imprisonment, intentional infliction of emotional distress and violation of constitutional rights, pursuant to 42 U.S.C. § 1983. The factual basis for the action, as revealed by the complaint, can be stated simply. The plaintiff was taken to Franklin Square Hospital by Toll Facilities' police, who believed that the plaintiff was suicidal. When he attempted to leave, the doctors and other agents of the hospital "restrained him, subsequently drugged him and still later caused him to be admitted involuntarily to a mental health facility," 68 Md.App. at 571, 514 A.2d at 1224, for the accomplishment of which they executed illegal documents—Physicians' Certificates that did not comply with the procedure prescribed by COMAR 10.21.01.03, *id.* at 576, 514 A.2d at 1226,—and handcuffed and transported him to "an asylum." 68 Md.App. at 571, 514 A.2d at 1224. Having been delivered to the "asylum," Taylor Manor, where he remained for 7 days, "through the actions of doctors and other agents of Taylor Manor, he was illegally involuntarily admitted, without his consent kept at Taylor Manor, subjected to unlawful procedures and other wrongful actions." *Id.* at 572, 514 A.2d at 1224.

Cognizant that the critical question is the basis for the claim, whether it is based on the rendering or failure to render health care, rather than how the claim is labeled, *id.* at 575, 514 A.2d at 1226, quoting *Brown v. Rabbitt,* 300 Md. at 175, 476 A.2d at 1169, the intermediate appellate court rejected the plaintiff's argument "that intentional torts simply are not 'medical injuries,'" *id.* at 573, 514 A.2d at 1225, and focused on the allegations of the complaint. It concluded:

> "The complaint shows that Long was brought to Franklin Square Hospital because he was thought to be a suicide risk. He was kept there involuntarily because the health care providers at that hospital were attempting to treat him for that problem. His claimed false imprisonment, from which the asserted emotional distress arose, was caused by those health providers who executed Physicians' Certificates for mentally disordered that are required for involuntary admission to mental health facilities."

*Id.* at 575–76, 514 A.2d at 1226. After discussing the plaintiff's arguments with respect to the violation of COMAR 10.21.01.03 and pertinent other provisions, the court observed:

> "It is apparent to us that what Long's complaint in fact alleges is misdiagnosis of his condition and the subsequent rendition of unnecessary and, therefore, improper care. The appellees' alleged failure to comply with various COMAR provisions dealing with the treatment of involuntary mental committees is in effect a charge of malpractice—the failure to adhere to a standard of care required (by COMAR) of certain health care providers."

*Id.* at 576, 514 A.2d at 1226–27.

The Court of Special Appeals proceeded to contrast its case with *Nichols v. Wilson,* noting:

> "The case before us is unlike *Nichols.* In that case the cause of action (the slap) did not arise from a negligent, reckless, or unnecessary suture removal. Rather, the slap was a gratuitous act that obviously was not part of the medical treatment. Here, the cause of action is based on

the treatment itself and other actions that are said to be in violation of mandated health care standards."

*Id.* at 567–77, 514 A.2d at 1227. The intermediate appellate court concluded:

"In the case before us, Long's claims arise from a doctor-patient relationship, albeit an involuntary one. They stem from the rendering of health care in alleged contravention of standards applicable to that care. They implicate directly the professional competence of the several appellees. We hold that Long's common law claims involve medical injuries as defined in § 3–2A–01(f), and thus are subject to arbitration as a condition precedent to judicial relief."

*Id.* at 578, 514 A.2d at 1227.

The plaintiff in *Roberts v. Suburban Hospital* brought, in the Circuit Court for Montgomery County, an action against the hospital, which presented three theories: strict liability, breach of implied warranties of fitness and merchantability and negligence. 73 Md.App. at 2–3, 532 A.2d at 1082. A hemophiliac, the plaintiff alleged that he had received all of his blood transfusions at the hospital and that he contracted AIDS as a result of a blood transfusion. *Id.* The hospital moved to dismiss the complaint, alleging failure to comply with the mandatory arbitration requirements. The Court of Special Appeals agreed, although the Circuit Court had not decided the case on that basis. It did so on the basis that the negligence count "stated a claim for breach of professional skill and duty and . . . it was therefore subject to the Act." *Id.* at 6–7, 532 A.2d at 1084. "That count charged the hospital with breaching a duty to use ordinary and reasonable care in the selection, screening and testing of blood suppliers and donors for infectious diseases and viruses including the AIDS virus and to use ordinary and reasonable care to mitigate the possibility of AIDS being transmitted to patients receiving blood transfusions in the hospital." *Id.* at 6, 532 A.2d at 1084.

The cases in which the Act has been found to apply, including those on which the appellee relies, have all involved claims that arose as a result of the rendering of medical

treatment or the failure to do so, *Goicochea v. Langworthy, supra* (alleged assault committed by doctor while examining the plaintiff for a hernia); *Brown v. Rabbitt, supra* (warranties, express and implied in connection with a tubal ligation); *Roberts v. Suburban Hospital, supra* (alleged negligence in connection with blood transfusions); *Long v. Rothbaum, supra* (misdiagnosis of mental condition), or there was such ambiguity in the pleadings in that regard that exclusion from the Act is required as a matter of law. *Jewell v. Malamet, supra* (alleged assault and battery committed by doctor by fondling the vaginal and breast areas of the plaintiff during two musculoskeletal examinations). *See also Cannon v. McKen, supra.*

As we have seen, the Court neither found the Act to apply nor not to apply in *Cannon v. McKen;* rather, it remanded the case to the Circuit Court for further proceedings to allow the plaintiff to plead facts which would resolve the issue. Of significance to the issue *sub judice,* however, was that, in that case, the plaintiff was injured while sitting in the dental chair as a dental patient, when the dental chair and/or x-ray wall attachment broke loose and injured her; there was a plausible connection between the allegations and the plaintiff's injuries being "medical injuries."

In this case, the allegations of the complaint clearly do not show that Stephanie's injuries were incurred during the active rendering of medical services and, indeed, they show that they were not inflicted by a medical care provider or as a result of that provider's treatment or failure to treat. In fact, the complaint does not allege injury by a health care provider during the rendering of medical treatment or services. Moreover, an assault, rape or attempted rape can in no way be described as medical service and it is inconceivable that it could, or would, be prescribed as treatment for depression. In addition, even were it to be so prescribed, assault, rape or attempted rape is completely lacking in any medical validity in that regard.

Nevertheless, the appellee maintains that the Act applies because, *inter alia*, Stephanie was under the care of a health care provider, the hospital, and the decision to hospitalize her and treat her condition involved medical judgment. Moreover, it believes that the diagnoses that were made with respect to Stephanie and the male patient who assaulted her, as well as the decisions that the hospital made with respect to where to house them necessarily involved professional judgment and, thus, implicate the Act. In effect, the appellee seems to be suggesting that Stephanie's hospitalization was itself treatment and that every decision emanating from the decision to hospitalize, however indirect and whatever its connection to the claimed injury, is the rendering of medical care.

■ The appellee reads our cases too broadly with respect to the interpretation to be given to "rendering health care." On the contrary, our cases make clear that the cause of the injury must have been "a breach by the defendant, in his[, her or its] professional capacity, of [the] duty to exercise ... professional expertise or skill" in rendering or failing to render health care. *Cannon v. McKen, supra,* 296 Md. at 36, 459 A.2d at 201. Thus, we have said that when it is clear from the allegations of the complaint that the plaintiff's claimed injury was not inflicted during the rendering or failure to render medical service or that it was the result of conduct having utterly no medical validity in relation to the medical care rendered, the action properly proceeds in Circuit Court, without first resorting to arbitration. *Goicochea v. Langworthy,* 345 Md. at 728, 694 A.2d at 479.

This case is much like *Nichols v. Wilson,* although the injuries in this case did not occur during the rendering of health care, at least not directly at the moment of the injury. Like the slap, the assault, rape or attempted rape by the male patient bore no relationship to the medical treatment for which Stephanie was hospitalized. What the Court said in *Nichols v. Wilson* thus applies with equal, if not greater—the medical provider did not cause the injury in this case—, force

here: "[i]n no way can it be said that the legislature intended such a claim to be within the Act." *Nichols v. Wilson*, 296 Md. at 161, 460 A.2d at 61.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY THE APPELLEE.